J. D. BREWSTER *v.* J. S. GALLOWAY et al.

1. TRUSTEE. *Trust fund.* A trustee may assign an order or decree in favor of the trust estate for a valuable consideration, the proceeds of such assignment enuring to the benefit of the trust estate, but he has no power to borrow money for his own use and transfer or assign such orders or decrees as collateral security, and a party who accepts such an assignment cannot be considered either as a legal or equitable assignee.

2. SAME. *Resignation. Res adjudicata.* Upon a petition filed by a trustee to make final settlement and resign, questions which are not directly presented to and passed on by the Court cannot be considered as *res adjudicata,* and the *cestui que trust* is not estopped from denying the correctness of the amount as due to or by him, when such indebtedness was not directly investigated by the Court.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. R. J. MORGAN, Ch.

Brewster *v.* Galloway.

McFARLAND & GOODWIN for Complainant.

L. W. FINLAY for Defendants.

McFARLAND, J., delivered the opinion of the Court.

The bill alleges that J. J. Murphy was appointed by marriage contract—entered into by the defendants, Galloway and wife, before their marriage—trustee, to hold and manage the estate of Mrs. Galloway, to her sole and separate use; that J. D. Coffee was trustee for his wife, Sallie R. Coffee, who was a sister of Mrs. Galloway, they being granddaughters of William Ruffin, deceased, whose estate was being wound up in the Chancery Court at Memphis. Murphy wishing to resign as trustee, filed his bill in the Chancery Court for a settlement and discharge from his trust.

By a decree rendered on the 26th of March, 1869, upon a settlement between Murphy, trustee, and Coffee, trustee, "the Court finds" that Mrs. Galloway was indebted to Mrs. Coffee in the sum of $1,422.47 with interest from the 1st of August, 1868, and the sum of $1,446.58 with interest from the 1st of October, 1868. Murphy was permitted to resign, and Galloway, the husband, appointed trustee, successor of Murphy, and ordered out of the first money coming to his hands, as trustee, to pay said sums to J. D. Coffee.

On the 27th of March, 1869, Galloway and wife, to secure the payment of said sums to Cof-

fee, executed and delivered to him two orders on Humes & Poston, attorneys at law, directing them to pay said sums to said Coffee out of the funds of Mrs. Galloway, which should come to their hands as her share in the estate of her grandfather, Ruffin, Humes & Poston being the attorneys of Galloway and wife. The orders in addition contained the following, viz: "This claim is a just one for value received, and we hereby make and constitute it a lien upon said remaining interest of Mrs. Galloway in the Ruffin estate." "This claim is also perfectly secured to John D. Coffee, trustee, by provisions of final decree in the case of J. J. Murphy, trustee, *v.* Mary E. Galloway and others, Chancery Court, No. 2630, and filed March the 24th, 1869.

The foregoing orders were accepted by Humes & Poston subject to their prior lien for fees. On the 3rd of April, 1869, said Coffee assigned said orders to the complainant, Brewster, "guardian," for a valuable consideration, and guaranteed the payment of the same, he (the complainant) being assured by Coffee and Humes & Poston that the share of Mrs. Galloway, to be derived under the decree in the cause involving the settlement of the Ruffin estate, would be largely in excess of the amount of said orders. Complainant filed the orders in the cause referred to, but failed to realize anything, and probably will receive nothing, owing to the disastrous result of the cause so far as the interest of Mrs. Galloway was concerned.

Upon the foregoing facts the bill assumes that the assignment and delivery of the aforesaid orders by Coffee to the complainant, operated as an equitable assignment of the judgment or decree rendered in favor of said Coffee, trustee, against Mrs. Galloway or her trustee, in the case of *Murphy* v. *Galloway*, before referred to; and failing to realize the amount upon the orders, complainant has the right to satisfaction out of any of "the trust property" of Mrs. Galloway to be found, and for this purpose makes other allegations and parties not necessary at present to be noticed.

The answer of Galloway and wife sets up as a defense that the settlements between the two trustees, made in the case of Murphy, trustee, *v.* Galloway, were only partial settlements, and by reason of subsequent transactions these results were changed so that there came to be nothing due from Mrs. Galloway's trust to Mrs. Coffee's.

In further explanation of this it should be stated, that while Murphy was trustee he sold some of the trustee property, and purchased another lot in or near Memphis, jointly with Coffee, and they erected improvements thereon, intended for a residence for the two families. Out of these expenditures, as it is claimed, arose the supposed indebtedness between the two trustees, but Galloway, as a witness, testifies that the balances found in favor of Coffee in the settlement had, in the case of Murphy, arose from the purchase, by him,

of personal property from Coffee, and the amount due to Coffee, for the board of Galloway's family, but, that he has since paid large sums for which the two trustees were at the time jointly liable—as we understand, for the improvement of the joint property—so that upon a settlement there would, in no event, be anything due from the trust estate of Mrs. Galloway to the estate of Mrs. Coffee.

The complainant's case rests upon two propositions: 1. That he became, by the payment made to J. D. Coffee and the assignment made by the latter of the orders on Humes & Poston for the payment of the decree in the Murphy case, equitable assignee of said decree, with the right to file this bill to carry said decree into effect; and 2. that the defendants, Galloway, trustee, and Mrs. Galloway are estopped to deny the validity of the decree referred to, or that in fact there was an indebtedness to that amount, due from the trust estate of Mrs. Galloway.

There is no allegation in the bill as to the purpose for which the money was advanced by the complainant to Coffee. It is not averred or proven that it was for the benefit of the trust estate. The proof is, that the complainant loaned Coffee $2,250, taking his note therefor due at twelve months with another note for eighteen per cent. interest on the amount, Coffee at the time assigning the orders on Humes & Poston, and guaranteeing the payment. It is true he signed the note and guarantee as "trustee," but it is clear

that as he had no power to borrow money or bind the trust estate in this mode, that the note and guarantee were his individual acts; the transfers of the orders were only as collateral security for the payment of Coffee's individual debt. It may therefore well be maintained that instead of the complainant becoming equitable assignee of the decree in the Murphy case by virtue of the assignment of the orders, that in fact the assignment by Coffee was a breach of his trust, from which the complainant can take no advantage, he taking the orders with full notice of the facts.

If there was in fact a valid indebtedness as shown by the decree in the Murphy case, it should properly enure to the benefit of the trust estate of Mrs. Coffee. Neither she or her trustee are parties to the present cause, and they would not be precluded by any decree herein rendered from hereafter taking proper steps to realize the sums thus due her. The trustee, Coffee, it is true, had the power to receive the sum due from Mrs. Galloway or her trustee, or, no doubt, to realize the amount by assigning the recovery for a value to a third party, but the transaction, both in form and substance, as shown by the record, was essentially different. It was a loan of money to J. D. Coffee upon his individual promise to repay it, secured by an attempted transfer of a chose in action belonging to the trust estate of Mrs. Coffee, there being nothing whatever to show that the borrowing of the money enured in any way to the bene-

fit of the trust estate, it not being even so al-
leged.

It is objected that the Court below improperly
admitted in evidence a copy of the decree ap-
pointing Coffee trustee for his wife, and defining
his power.    But the bill alleges that he was trus-
tee; this was a part of the complainant's case, and
so far as it became necessary to know the terms of
the trust the evidence was certainly legitimate.

The transaction, therefore, not being in legal
effect a purchase of the decree in favor of, or in-
debtedness due to the trustee of Mrs. Coffee, for a
valuable consideration paid to the trustee, for the
benefit of said trust estate, we hold that complain-
ant did not thereby become equitable assignee of
said claim.    Besides, we incline to the opinion
that under the facts of this case, Mrs. Galloway is
not estopped from showing that in fact no such
valid indebtedness as represented by the decree in
qestion existed, and that the trust property of Mrs.
Galloway cannot now be taken in satisfaction.
She would not be so estopped as against the trus-
tee, Coffee, and if the complainant can have any
right at all, he can stand in no better attitude.

This, we think, is apparent from an examina-
tion of the proceeding in which the decree was
rendered.    It was simply the petition of Murphy
to the Chancery Court to pass his accounts and
permit him to resign as trustee, and appoint a
successor.

The petitioner states that he had sold one

piece of the realty, and re-invested the bulk of the proceeds in the purchase and improvement of a suitable residence and home for Mrs. Galloway; the property so purchased being jointly owned by her and her sister, Mrs. Coffee, that the improvements were nearly completed, but that in making the improvements some indebtedness was created which would have to be arranged; the debts being joint debts of the two trustees. There is no allegation in regard to any indebtedness from him to Coffee, or from one trust estate to the other, but the petition prays "that an account be taken between Mrs. Sallie R. Coffee and Mrs. Mary E. Galloway, and a settlement be had of all outstanding indebtedness due on account of such improvements and investments."

Galloway and wife answer jointly and agree to the account prayed for, and the answer of Coffee and wife is to the same effect.

The Chancellor ordered the account prayed for. Murphy filed his report showing receipts and expenditures to upwards of $20,000. A paper was also filed signed by Murphy and Coffee, showing that upon a general settlement between them there was found to be due to Coffee $1,422.44 on the 1st of August, 1868, and $1,446.58 on the 1st of October, 1868, being the excess paid by Coffee on the joint improvements.

The Master reported accordingly, founding his report upon this settlement, and the decree confirming the report, after allowing Murphy to re-

sign and appointing Galloway his successor, orders him to pay said sums out of the first money coming to his hands.

It will be observed that the decree was, in effect, in favor of one defendant against the other, for although Murphy was the complainant or petitioner, it was for the purpose only of having his resignation accepted.

There was no allegation in the pleadings putting in issue the fact of the indebtedness between the two parties, or raising the question as to the power of Murphy to create a debt, binding the estate of Mrs. Galloway. There was no evidence in relation to the debt, or for what purpose it was created, except the written settlement of the two trustees.

Galloway's deposition was taken, and he says he had examined the *report* of Murphy and found it to be correct, but this, as we understand, does not refer to the settlement between the two trustees. Upon these facts we should hesitate to hold the decree in question a conclusive adjudication, binding the separate estate of Mrs. Galloway for its payment. It now appears to be inequitable to do so in favor of Coffee, and, as we said, the complainant in no event stands in a better attitude.

We do not mean to say that a matter deliberately adjudged by a Court of competent jurisdiction, upon pleadings presenting the case, can be enquired into otherwise than in the regular mode. It can hardly be supposed that the Court, in the

proceeding referred to intended to adjudge the validity of the indebtedness, or that Murphy had the power to create such a debt, as most clearly he had no such power. Although the marriage contract was made an exhibit to the petition, there was nothing to present the question to the Court. If the matter was not absolutely *coram non judice,* the adjudication ought not to be held conclusively binding upon the separate estate of a married woman.

To have given the Court jurisdiction to pronounce a decree binding the separate estate of Mrs. Galloway to pay the sums specified, the direct question should have been presented by the pleading upon allegations showing the existence, nature and character of the supposed debt, the power of the trustee to contract the same, and praying for a decree directing the trustee in the discharge of his duties or directly subjecting the trust property to the payment of sums claimed to be owing. But the decree in question was entirely outside of the allegations of the pleadings, and upon a matter which, we think, cannot fairly be said to have been within their scope.

The adjudication to be conclusive should be upon the very point brought directly in issue by the pleadings: *Edwards* v. *McConnell,* Cooke's Rep. 304. See also *Estil* v. *Taul,* 2 Yer., 467; *Bugg* v. *Norris,* 4 Yer. 328. Also *Elrod* v. *Lancaster,* 2 Head, 572, where the Court refused to hold a decree between defendants to a cause conclusive upon them, be-

cause there was no such antagonism between them as to make them actors against each other.

That was a case where the widow of a testator, with her second husband, had filed a bill against the executor for an account and to obtain the share due them; the children, who were infants, were also made defendants, and in the account and decree their shares ascertained.

But this was held not conclusive in a subsequent bill, filed by them. It is probable, therefore, that upon either of these grounds the complainant should be repelled, but we place our decision more especially upon the first ground.

The decree of the Chancellor, dismissing the bill with costs, is affirmed.