Coulter *v.* Davis and Wife.

13L 451
110 363

## S. R. COULTER *v.* C. B. DAVIS and WIFE.

1. PLEADING AND PRACTICE. *Res adjudicata.* To make a judgment or decree in one suit a bar to another suit between the same parties, it must appear not only that the subject-matter of the two suits are the same, but that the proceedings were for the same object and purpose, the same point being directly in issue.

2. SAME. *When a decree in chancery is no bar to action at law.* A decree in chancery, on final hearing, dismissing a bill filed to perpetually enjoin as a nuisance the flow of water over the complainant's land by reason of a mill-dam, is no defense to an action at law brought by the same party against the same defendant to recover damages for the overflow.

3. SAME. *Issue of nul tiel record triable by court.* The issue of *nul tiel record* joined on a plea of former adjudication which makes no averment of extrinsic facts, is triable alone by the court upon inspection of the record, and it is error to submit the issue to a jury; but if the jury find the facts as the court should have found, the error would not be so material as to require reversal.

FROM BLOUNT.

Appeal in error from the Circuit Court of Blount county. S. A. RODGERS, J.

Coulter v. Davis and Wife.

S. P. ROWAN, W. L. WALKER and E. T. HALL. for Coulter.

R. N. HOOD and E. T. CATES for Davis.

COOPER, J., delivered the opinion of the court.

Martin McTeer, owning land on Little Ellijoy Creek, built a dam across the creek, and erected a mill on his land at a time beyond the recollection of the oldest witnesses examined in this case, and continued to run the mill until his death in 1853. He devised the mill property to his wife, Ann McTeer, who died in 1865. Hiram Bogle became her agent in the management of the mill after her husband's death. In 1856, with her consent and approval, the old dam having become so dilapidated as to require rebuilding, Bogle made a parol agreement with one Holland, who owned the adjoining land up the creek, whereby he was permitted to erect, and did erect, a new dam across the creek about 250 yards above the old dam, and bring the water from the pond above the new dam by a ditch or race. The mill continued to be run in this new mode until 1869, when the race filled up, and the mill was abandoned, because the property was then in litigation, commenced after the death of Ann McTeer, and this litigation was not terminated until about 1875. In the meantime Holland had died, and one Knox bought that part of his land adjoining the McTeer tract. Knox built a dam across the creek in 1871, about where Bogle had built his dam under his agreement with Holland, and erected a mill lower down the creek, partly across the ditch

Coulter *v.* Davis and Wife.

or race dug by Bogle, bringing the water from the pond by the race. One witness locates this mill only fifteen yards from the McTeer line. The mill was at first a saw mill, to which a grist mill was afterwards added. In 1873, Knox sold and conveyed the land to the defendant, C. B. Davis, who afterwards conveyed the same to his wife. In 1875, the McTeer land was sold at chancery sale, and bought by one Boling, to whom the clerk of the court made a deed. In 1876, Boling sold and conveyed the land to the defendant, Coulter, who during that year re-erected a dam across the creek at or within a few feet of the location of the McTeer dam, and built a grist mill run by the water power thus produced. This dam is not as high as the old McTeer dam by probably two feet, and does not consequently back the water in the creek as high as did the old dam. But the level of the water is so raised by the dam that the fall from the wheel of the Davis mill by the lower end of his race is not sufficient to carry off the water, and the wheel "wades," as the witnesses say, whereby the value of the mill is seriously affected.

In this situation of affairs, on October 1, 1878, Davis and wife filed a bill against the defendant, Coulter, setting out the wife's title to the mill property claimed by them, stating that the defendant had erected a dam and mill, as hereinbefore mentioned, averring that the effect of the dam was to make their wheel wade eight inches in water and destroy the power, and asking that the dam be declared a nuisance and abated, and the defendant perpetually enjoined

from interfering with the complainant's rights. The defendant answered the bill, and such proceedings were had that on June 11, 1879, the cause was heard by the chancellor and the bill dismissed. The complainants appealed to this court, and the cause was heard by the arbitration court, upon whose recommendation a decree was rendered by this Court on March 16, 1880. The chancellor's decree was: "That the allegations of the bill are met and denied in the answer and not sustained by the evidence, and that complainants are not entitled to the relief sought, or to any relief in this cause," and the bill was dismissed with costs. The decree of this court was: "The court is of opinion and doth decree that the complainants are not entitled to the relief sought, or to any relief in this cause. It is therefore ordered, adjudged and decreed that the decree of the chancellor be and is in all things affirmed, and that complainants' bill be, and the same is dismissed, and the complainants pay all the costs of this court and of the court below."

In the meantime, on July 7, 1879, Davis and wife brought against Coulter the action at law which is now before us, to recover damages for the injury to the wife's mill property by the erection of the defendant's dam. The defendant put in a plea of not guilty, on which issue was joined. Afterwards, and after the decree of this court in the chancery case, the defendant, by leave of the court, filed another plea, relying upon that decree as a bar to the action, averring: "That the cause of action in said cause, and the cause of action in this cause, are one and

the same, and not other or different, and that the par-
ties in interest in said cause and the parties in interest
in this cause are one and the same, and occupy the
same relative position to each other, and not other or
different." The plea concluded with a verification.
The replication of the plaintiffs is: "That the al-
leged case decided by the Supreme Court is not an
adjudication of the subject-matter and right of action
involved in this suit, and pray that this may be in-
quired of by the country." The cause was tried, upon
these issues, by a jury who found a verdict in favor
of the plaintiffs for $854, upon which judgment was
rendered. The defendant appealed in error. The
Referees have reported in favor of reversing the judg-
ment, upon the ground that the decree in the chan-
cery case is conclusive on the rights of the parties,
that the verdict is not sustained by the evidence, and
is moreover excessive in amount. The defendants in
error have alone filed exceptions.

The only conclusion of law reached by the Referees,
to which exception is taken, is the opinion expressed
by them that the proceedings in the chancery suit con-
stitute a complete defense to the present suit. In
this conclusion the Referees are in error. To make
a judgment or decree a bar to another suit between
the same parties it must appear or be shown that
the subject-matter of the former suit was the same,
that the proceedings in that suit were for the same
object and purpose as those of the new suit, and
that the same issue was joined: *Arnold* v. *Kyle,* 8
Baxt., 319. The adjudication to be conclusive must

be upon the very point directly in issue by the pleadings: *Brewster* v. *Galloway*, 4 Lea, 558. The plea by its averment of facts must meet these requirements: *Riley* v. *Lyons*, 11 Heisk., 246. If the plea in this case be treated as sufficient, the record produced does not sustain it. The object of this suit was to recover damages for the trespass upon the plaintiff's land by the backwater of the defendant's dam. This was the very point directly in issue by the pleadings. The court of chancery has no jurisdiction of such an issue at all. The damages grew out of injury to property, and being unliquidated did not fall within the original jurisdiction, and are expressly excluded from the jurisdiction of the court as extended by statute of 1877, chapter 97, section 1.

The object of the bill in chancery was to perpetually enjoin the nuisance alleged to be created by the dam. The rule of equity in such cases, as settled by our decisions, is that where the injury is immediate and irreparable, or the remedy at law is from the nature of the injury imperfect, chancery will interpose by injunction; but the right must be clear, otherwise equity will not interfere until the right is ascertained at law: *Caldwell* v. *Knott*, 9 Yer., 209: *Lassater* v. *Garrett*, 4 Baxt., 368; *Vaughn* v. *Law*, 1 Hum., 123; *Wall* v. *Cloud*, 3 Hum., 181. All that was settled by the decree of this court in the chancery suit was that the complainant was not entitled to the equitable relief sought because the equity of the bill was met by the answer and not sustained by the proof. The equity of the bill was that the injury was immediate and irre-

parable or the remedy at law imperfect. Under the plea and replication we are confined to the record, and cannot go outside of it, even if the defendant might by proper averments of fact have shaped his plea so as to put in issue the actual ground of decision in the opinion of the arbitrators.

For another reason, the decision could in no event conclude the plaintiff's right of action. The declaration dates the trespasses from 1876, and on divers other days and times down from that year. There is proof tending to show that after the decree of this court in the chancery case, the defendant raised his dam. The decree could only cover the injury at the time of the commencement of the chancery suit. Any expression of opinion beyond the existing state of facts under adjudication would be mere dictum. The plaintiffs had the right to a trial upon the new facts.

In this connection it may be added that the circuit judge was clearly in error in submitting to the jury the issue upon the plea of former adjudication. The plea, as we have seen, relies exclusively upon the record, and the replication is in substance that there is no such record. The issue of *nul tiel record*, is triable alone by the court upon inspection of the record, and it is error to submit the issue to a jury: *Ridley* v. *Buchanan,* 2 Swan, 555; *Hill* v. *State,* 2 Yer., 248. It is only when the plea undertakes to identify the cases by averment of extrinsic facts, that there is a question of fact for a jury: *Hite* v. *State,* 9 Yer., 358. But if, in a case of improper submission to them, the jury find as the court should have found,

the error is not so material as to require a reversal: *Coffee* v. *Neely*, 2 Heis., 304, The jury in the present instance must have found, in accordance with the conclusion of this court as above expressed, that the former adjudication was not upon the point of issue in this case. And the circuit judge only followed the lead of the counsel on both sides in treating the issue joined upon the plea as a question for the jury.

The only other material findings of the Referees which are excepted to are upon matters of fact. The Referees have treated the case in their report as if it were a chancery case, in which it was their duty to ascertain the facts for themselves. They merely say that such a fact is not satisfactorily established, or that they are of opinion the fact is as they state it. No doubt their conclusion, that the proceedings in the chancery court constituted a complete defense to this suit, tended to mislead them as to the importance of their rulings on the facts. The issues in this case were tried by a jury, and the settled rule of this court is not to disturb the verdict of a jury if there is any evidence to sustain it. In no one of the conclusions excepted to do the Referees say that there is no evidence to sustain the contrary finding of the jury. And upon examinaton we find that in every instance there is conflicting evidence, and upon every point covered by the verdict of the jury the preponderance is in favor of their finding. The Referees say that the plaintiff below failed to establish the fact satisfactorily that the plaintiff in error raised his dam after the decision of the chancery suit and before the

bringing of the present suit.    Upon this point the weight of evidence may · be in favor of the conclusion of the Referees, but there is evidence to the contrary, and the fact was immaterial in view of the actual verdict.    On every other point the preponderance of testimony is in favor of the verdict.

The material issue submitted to the jury was, whether the prescriptive right of the McTeers to flow water by a dam on the land of the plaintiff below was abandoned by the arrangement made with Holland in 1856, and what was done thereafter by those under whom the plaintiff in error claims?    The Referees say on this· point that they do not think that the prescriptive right to maintain the old dam had been abandoned in 1856, and that the court of arbitration had held the same way.    Here again, it is obvious, that the supposed finding of the court of arbitrators stood in the way of the exercise by the Referees of their own best judgment.    If untrammeled, they would have seen, that the court of arbitration did not have before them the evidence of Hiram Bogle, the agent of Ann Mc-Teer, who made the arrangement with Holland in· 1856, and conducted the mill under it until 1869. He testifies positively that his agreement with Holland was that; in consideration of the permission given by Holland to erect the new dam and dig the ditch on his land, the land overflowed by the old dam was to be surrendered to Holland.    He further testifies that the terms of the agreement were fully made known to Ann McTeer, his principal, and agreed to by her, although he cannot recollect that the word abandon

Coulter *v.* Davis and Wife.

was used. There is no testimony in conflict with that of this witness, and the jury were of course well warranted from this testimony, and from what took place in accordance with the arrangement made to find an abandonment of the old prescriptive right, there being an absolute non-user of the old right for just about twenty years.

The only other material opinion or finding announced by the Referees is that the damages are excessive. But the only evidence touching the extent of damage is that the pecuniary loss arising from the flooding of the plaintiffs' wheel is from one to two dollars a day. The jury manifestly found that the old prescriptive right was lost by abandonment. In that view, the defendant below was a trespasser from the time of the completion of his dam in 1876. From that date until the commencement of this suit in July, 1879, would be over two and a half years. Even the lowest estimate of the witnesses would run up the damages during that length of time to about the sum found by the jury. And we can see no ground for saying that there is no evidence to sustain the verdict, or that the damages are, in view of the testimony, excessive.

The exceptions to the report of the Referees must be sustained, and the judgment of the circuit court affirmed with costs.