**WAYBRIGHT et al. v. COLUMBIAN MUT. LIFE. INS. CO.**

No. 36.

District Court, W. D. Tennessee, W. D.

Dec. 11, 1939.

Charles G. Revelle, of Los Angeles, Cal., and Hillsman Taylor, of Memphis, Tenn., for plaintiffs.

J. Morgan Stevens, of Jackson, Miss., and Scott Fitzhugh, of Memphis, Tenn., for defendant.

MARTIN, District Judge.

Should the plea of res adjudicata, set up in the answer of the defendant, be sustained?

The complaint was filed by citizens of Florida, Louisiana, Texas and Alabama against an insurance company, organized under the laws of Mississippi but with its main office, records and assets in Memphis, Tennessee, in this judicial district of the United States.

The suit is a class action brought by plaintiffs in behalf of themselves and all others holding fraternal or beneficiary covenants and certificates originally issued by the Eminent Household of Columbian Woodmen, or the Columbian Woodmen of Mississippi, or the Columbian Mutual Life Assurance Society, all ultimately merged and converted into the defendant company.

Complaint is made that on March 16, 1937, an illegal assessment and lien of one hundred per cent of the life reserve, less indebtedness, was declared by the insurance company against the fraternal policy holders in contravention of their rights expressly recognized on August 9, 1926, when the defendant company was converted from a fraternal benefit society into a mutual life and disability insurance company.

The bill of complaint charges:

"That the provisions of the amendment to the Articles of Incorporation converting said Fraternal Society to a mutual life company created and made all persons then holding fraternal covenants a separate and distinct class with no change whatever in their rights, duties, or obligations as determined by their covenants issued prior to the approval of said amendment and by the Constitution of the Fraternal Society and the laws governing the same, but with no further power or authority to continue to write fraternal covenants or to further continue business operations except to have their business and affairs managed, conducted and gradually and eventually liquidated by the Directors of the Mutual Company, and that upon said conversion and at all times thereafter, the said Columbian Mutual Life Insurance Company and its Officers and Directors became and were Trustees for the beneficiary covenant holders as a class, and it became and was the duty of such Officers and Directors of said mutual company to thereafter keep and maintain a separate and distinct account of the funds, credits, property, assets, payments, and contributions of the fraternal covenant holders and to keep and maintain separate books thereon and of the income from the assets, payments, and contributions of the covenant holders and of the operating and management, cost and expense of the business and affairs of the covenant holders and to equitably distribute and pro-rate the expenses of the company between the covenant holders and the mutual policy holders and to entirely segregate and keep and maintain separate the affairs and business of the covenant holders as one class and the mutual policy holders as another class, and not to mingle the funds, assets, business and affairs of the two classes and to use and apply the assets, funds, and payments of the covenant holders only to and for the use and benefit of the covenant holders and not to apply or use any of such assets, funds, and payments for the use or benefit of the mutual members or for the operation or management of the business affairs of the mutual policy holders or for the cost or expense of obtaining new and additional mutual members, and not to apply or use any part of the assets, funds, payments, and contributions of the covenant holders except for the payment of claims on beneficiary covenants and accumulating the required reserve on the covenants and meeting and paying the reasonable cost and expense of managing and handling the affairs of the covenant holders.

"That in total disregard and violation of such duty, said Officers and Directors have wrongfully and unlawfully mingled the assets, funds, contributions and payments of the covenant holders with the assets, funds, and payments of the mutual members and have wrongfully and unlawfully misused and misapplied the assets, funds, payments and contributions belonging to and paid in by the beneficiary covenant holders and have wrongfully appropriated, used, and applied such assets, funds, payments and contributions to uses and purposes other than for and in behalf of the covenant holders and have wrongfully misappropriated same to the uses, benefits, and purposes of the mutual members and of the mutual company and to the cost and expense of the management, control, operation and development of the business and affairs of the mutual members and the mutual company, and to meeting and taking care of deficits and impairments in the assets and financial condition of the mutual members."

The plaintiffs pray for a production of the books of the company in this proceeding, and for a complete accounting and that "in such accounting the funds, assets, property, payments and experiences of the covenant holders be separated from those of the mutual policy holders and the mutual company, and that same be credited solely and exclusively to the covenant holders and that defendant be required to account fully to the covenant holders for all assets,

funds, and property transferred to it on the 9th day of August, 1926, and for all payments and contributions made since that date by the covenant holders and for all profits, earnings received therefrom and thereon and for all disbursements and expenditures made for and in their behalf."

It is further prayed that the assessment and lien made and declared on March 16, 1937, be held "discriminatory, unauthorized, illegal, excessive and invalid"; or, if not, that such assessment with interest thereon "be declared the sole and exclusive asset of the covenant holders and that it be credited exclusively to the funds and assets of the covenant holders and be held, used, and applied from time to time for their sole use and benefit, to be handled, applied, disbursed, distributed and reduced from time to time as the laws and financial condition of the covenant holders warrant and that no part thereof be credited to or used for any other purpose nor for the use or benefit of any other person or persons."

The defendant company, in its answer, pleads res adjudicata, elaborating in descriptive detail the issues involved and the applicable Mississippi statutes and the material resolutions and pertinent charter and by-law provisions considered in the case of Walter D. Garland et al. v. Columbian Mutual Life Insurance Company, No. 42370 R.D., in the Chancery Court of Shelby County, Tennessee, in which the decree of the Chancellor dismissing the bill was affirmed by the Supreme Court of Tennessee.[1]

The opinions and decrees of both the trial court and the appellate court, and the entire record in the state court proceeding are exhibited with defendant's answer, and it is averred that "said bill, being a class bill, has fully bound plaintiffs upon all the issues therein presented, which clearly made, or necessarily included all the issues which are now involved in the present suit, as if said plaintiffs and all other holders of fraternal covenants or certificates had been expressly named as parties complainant to said bill."

The Supreme Court of Tennessee in its unpublished opinion in the Garland case, supra, undoubtedly considered the state Chancery suit to be a *class suit*, for the Court said: "Complainants are not here seeking individual relief, but are suing as a class seeking to avoid the assessment made by the Board of Directors pursuant to administrative findings made by the Insurance Commissioner of Mississippi and concurred in by the Insurance Commissioners of Tennessee and Alabama."

The right to bring class suits is recognized in Tennessee (McCaleb v. Crichfield, 52 Tenn. 288, 5 Heisk. 288; Finney v. Garner, 110 Tenn. 67, 71 S.W. 592); and also by the Supreme Court of the United States (Smith v. Swormstedt, 16 How. 288, 289, 14 L.Ed. 942); formerly by Equity Rule 38, 28 U.S.C.A. following section 723, and now by Rule 23, Rules of Civil Procedure, for District Courts, 28 U.S.C.A. following section 723c; and by numerous decisions.

A quite relevant class suit, Hartford Life Insurance Company v. Ibs, 237 U.S. 662, 672, 35 S.Ct. 692, 696, 59 L.Ed. 1165, L.R.A.1916A, 765, quotes with approval from Smith v. Swormstedt, 16 How. 288, 303, 14 L.Ed. 942, supra: "Where the parties interested in the suit are numerous, their rights and liabilities are so subject to change and fluctuation by death or otherwise, that it would not be possible, without very great inconvenience, to make all of them parties, and would oftentimes prevent the prosecution of the suit to a hearing. For convenience, therefore, and to prevent a failure of justice, a court of equity permits a portion of the parties in interest to represent the entire body, and the decree binds all of them the same as if all were before the court. The legal and equitable rights and liabilities of all being before the court by representation, and especially where the subject-matter of the suit is common to all, there can be very little danger but that the interest of all will be properly protected and maintained." This language is also quoted in Supreme Tribe of Ben Hur v. Cauble, 255 U.S. 356, at page 363, 41 S.Ct. 338, 65 L.Ed. 673, infra.

In the Ibs case, the Supreme Court cites Hawkins v. Glenn, 131 U.S. 319, 330, 9 S.Ct. 739, 33 L.Ed. 184, 191; Beals v. Illinois, etc., R. Co., 133 U.S. 290, 10 S.Ct. 314, 33 L.Ed. 608; Kerrison v. Stewart, 93 U.S. 155, 23 L.Ed. 843; Supreme Council of Royal Arcanum v. Green, 237 U.S. 531, 35 S.Ct. 724, 59 L.Ed. 1089, L.R.A.1916A, 771, and adds, "The principle is recognized both in England and in this country. 1 Pom.Eq.Jur. 3d ed. §§ 267, 268. In Corey

---

[1] No opinion for publication.

888

v. Sherman, 96 Iowa [114], 115, 64 N.W. 828, 32 L.R.A. 490 [514], and Carlton v. Southern Mutual Ins. Co., 72 Ga. 371(2), 379(5–10), the rule was applied in cases involving the rights of those interested in mutual insurance funds raised by collections from many policy holders."

In Sovereign Camp of Woodman of the World v. Bolin, 305 U.S. 66, 59 S.Ct. 35, 83 L.Ed. 45, 119 A.L.R. 478, decided November 7, 1938, the Supreme Court held that in a class suit to determine the validity of certificates issued by a mutual beneficiary association, the association represents all its members and stands in judgment for them, and the judgment in such suit is conclusive upon all the members of the association with respect to all rights, questions or facts therein determined. Cf. Hartford Life Ins. Co. v. Barber, 245 U.S. 146, 38 S.Ct. 54, 62 L.Ed. 208; Supreme Tribe of Ben-Hur v. Cauble, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673.

In the class suit of Supreme Council of Royal Arcanum v. Green, 237 U.S. 531, 35 S.Ct. 724, 59 L.Ed. 1089, L.R.A.1916A, 771, it was held that a judgment rendered by a court of the state of incorporation holding an amendment to the constitution and by-laws of a fraternal and beneficiary corporation to be legal, amounted to a construction of the charter by the courts of the state which the courts of another state were bound to recognize under the full faith and credit clause of the Federal Constitution. U.S.C.A. Const. art. 4, § 1. See the same principle of the binding effect of a judgment by virtue of the "full faith and credit clause" recognized in Roche .v. McDonald, 275 U.S. 449, 48 S.Ct. 142, 72 L.Ed. 365, 53 A.L.R. 1141; Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123.

So, it seems settled law that a small minority of numerous interested parties may maintain a class suit in behalf of themselves and others, similarly situated for an object common to them all.

In 15 R.C.L., page 1026, paragraph 500, is a clear statement: "The doctrine of virtual representation whereby persons may be bound by a judgment, although not parties to the suit, on the theory that they are sufficiently represented by those who are parties on the record, has been applied to cases in which there are large numbers of parties in interest, and whenever the parties in interest are so numerous as to make it impracticable or very inconvenient and expensive to bring them all before the court, it is sufficient that such a number be made plaintiffs, or defendants, as will fairly represent the interests of all standing in like character and responsibility, and a judgment against them will have the effect of res judicata against all who were thus represented."

The former suit, being classified as a class action, what effect did its adjudication have upon the right of plaintiffs to maintain the present action?

For answer, we must look to Tennessee law; for while many outside authorities, state and federal, have been cited and urged by counsel, from apparently superabundant precaution, the attorneys have correctly conceded that the law of Tennessee, the state in which the judgment in the prior proceeding was rendered, controls upon the question of res adjudicata in this cause.

In Ruhlin v. New York Life Insurance Co., 304 U.S. 202, 205, 58 S.Ct. 860, 82 L.Ed. 1290, the Supreme Court, in holding that the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, is applicable to a question of construction of a contract arising in a suit in equity, said (304 U.S. op. 209, 58 S.Ct. page 862, 82 L.Ed. 1290): "The parties and the federal courts must now search for and apply the entire body of substantive law governing an identical action in the state courts. Hitherto, even in what were termed matters of 'general' law, counsel had to investigate the enactments of the state Legislature. Now they must merely broaden their inquiry to include the decisions of the state courts, just as they would in a case tried in the state court, and just as they have always done in actions brought in the federal courts involving what were known as matters of 'local' law."

In Carson v. Three States Lumber Co., 6 Cir., 149 F. 377, 382, the Court of Appeals, in affirming Judge McCall, a predecessor judge in this district, held that although a material decision was contained in a state court's *opinion* and not in its *decree*, it was nevertheless res adjudicata of complainant's right to recover, being within the issues tendered by the bill of complaint.

The Court said that "resort may be had to an *opinion* of the Supreme Court of Tennessee, not only to ascertain the rea-

sons for the decree entered pursuant thereto, but also *what has been decreed.*" It was said further: "There can be no doubt that, if the action below had been brought in the state court of appropriate jurisdiction, the holding of the Supreme Court of Tennessee in the former suit as to what was a reasonable time in which to cut and remove the timber in a certain time would have been held by the state court to have been res judicata. If it was res judicata there, it is res judicata here. In the case of Union & Planters' Bank v. Memphis, 189 U.S. [71] 72, 23 S.Ct. 604, 47 L.Ed. 712, Chief Justice Fuller, affirming this court in same case reported 111 F. 561, 49 C.C.A. 455, said: 'What effect a judgment of a state court shall have as res judicata is a question of state or local law.'"

■ The Tennessee authorities will now be examined for guidance in application of the controlling local law.

In 6 Michie, Tenn. Digest, page 193, citing a long list of cases, the author says: "It may be stated as a general rule that to make a judgment or decree in one suit a bar to another suit between the same parties, it must appear not only that the subject of the two suits is the same but that the proceedings were for the same object and purpose, the same point being directly in issue."

The following Tennessee decisions hold that the adjudication, to be conclusive, must be upon the very point brought directly in issue by the pleadings: Stockley v. Cissna, 119 Tenn. 135, 151, 104 S.W. 792; Memphis City Bank v. Smith, 110 Tenn. 337, 75 S.W. 1065; Coulter v. Davis, 81 Tenn. 451, 13 Lea 451; Brewster v. Galloway, 72 Tenn. 558, 567, 4 Lea 558; Estill v. Taul, 10 Tenn. 467, 2 Yerg. 467, 24 Am.Dec. 498; Edwards v. McConnel, 3 Tenn. 305, 1 Cooke 305; Beard v. Beard, 10 Tenn.App. 52. This doctrine, declared in Edwards v. McConnel, supra, is at least 126 years old in Tennessee.

A later case than any on the list cited above, Pile v. Pile, 134 Tenn. 370, 183 S.W. 1004, 1006 (referred to with approval in Millsaps v. Crofts, 159 Tenn. 582, 584, 21 S.W.2d 389, and in Hall v. Grossum, 144 Tenn. 1, 18, 228 S.W. 1039) is to the same effect and will be quoted: "In order that a judgment may be effective as res adjudicata, it is essential that the party sought to be precluded thereby should have sued or been sued in both cases, in the same capacity or character and to enforce or have adjudged the same right, and it must appear not only that the res affected by the two suits is the same, but that the proceedings were for the same object or purpose, the same point being directly in issue. Bank v. Smith, 110 Tenn. [337] 338, 75 S.W. 1065; Melton v. Pace, 103 Tenn. 484, 53 S.W. 939. The adjudication to be conclusive must, broadly speaking, be upon the very point put directly in issue by the pleadings. Brewster v. Galloway, 4 Lea [558], 72 Tenn. 558; Coulter v. Davis, 13 Lea [451], 81 Tenn. 451, 456; Harris v. Mason, 120 Tenn. 668, 115 S.W. 1146, 25 L.R.A.(N.S.) 1011. Or on a point necessarily involved. Eakin v. Riddle, 127 Tenn. 426, 155 S.W. 166, and cases cited. * * * When the second suit is upon the same cause of action and between the same parties as the first, the judgment in the former is conclusive in the latter as to every question which was or might have been presented and determined in the former. * * * Where the record is such that there is or may be a material issue or matter in the second suit upon a different cause of action, which may not have been raised, litigated, and decided in the former action, the judgment therein does not constitute an estoppel from litigating this issue, question, or matter, unless by pleading or proof the party asserting the estoppel establishes the fact that the issue, question, or matter in dispute was actually and necessarily litigated and determined in the former suit. Harrison v. Remington Paper Co., 140 F. 385, 72 C.C.A. 405, 3 L.R.A.(N.S.) 954, 5 Ann.Cas. 314; Dooley v. Potter, 140 Mass. 49, 2 N.E. 935; Ryder v. Loomis, 161 Mass. 161, 36 N.E. 836; Huntzicker v. Crocker, 135 Wis. 38, 115 N.W. 340, 15 Ann.Cas. 444."

The statement in Boyd v. Robinson, 93 Tenn. 1, 28, 23 S.W. 72, 79, to the effect that res adjudicata even applies "to every point which properly belongs to the subject of litigation, and which the parties exercising a reasonable diligence might have brought forward at the time", seems subsequently to have been disapproved; for the distinguished Chief Justice Beard, in a later case, expressly says that, "this proposition is to be confined in its effect to the matter which the court then had before it, and cannot be taken to apply in every case where the rule of res adjudicata is invoked." Harris v. Mason, 120 Tenn. 668, 687, 115 S.W. 1146, 1151, 25 L.R.A.,N.S., 1011.

Sale v. Eichberg, 105 Tenn. 333, 337, 59 S.W. 1020, 52 L.R.A. 894, seems to stand in line, however, with Boyd v. Robinson, supra.

In Harris v. Mason, supra, the Tennessee Supreme Court, quoting from Russell v. Place, 94 U.S. 606, at page 610, 24 L. Ed. 214, thus reasoned: "According to Coke, an estoppel must 'be certain to every intent'; and, if upon the face of a record anything is left to conjecture as to what was necessarily involved and decided, there is no estoppel in it when pleaded, and nothing conclusive in it when offered as evidence."

Confusion with respect to the inclusiveness of the doctrine of res adjudicata in Tennessee results from the following language of Special Justice Ed. J. Smith in the recent case of Jordan v. Johns, Feb. 23, 1935, 168 Tenn. 525, 534, 79 S.W.2d 798, 801, which ignores Pile v. Pile, supra, and the above cited earlier cases: "It is settled law that, as between the same parties, in the same capacities, and touching the same subject matter, the estoppel of a former judgment or decree is conclusive, not only as to matters actually put in issue, but equally so as to those which, by due diligence on the part of the litigant, or those charged with the management of his case, might have been put in issue in the pleadings filed in the former suit."

In Mississippi, the state of incorporation of the defendant insurance company, the rule of res adjudicata has been uniformly more strictly applied than in Tennessee, and is in line with the foregoing remarks in Jordan v. Johns, supra.

Bates v. Strickland, 139 Miss. 636, 103 So. 432, holds that where a court has jurisdiction of the subject matter and the parties in interest, its judgment is not alone res adjudicata of the questions specifically presented by the pleadings, *but is also res adjudicata of all questions necessarily involved and which could have been presented*. See to same effect: Lion Oil Refining Co. v. Crystal Oil Co., 171 Miss. 36, 156 So. 593; Darrow v. Moore, 163 Miss. 705, 142 So. 447; Love v. Yazoo City, 162 Miss. 65, 138 So. 600; Dean v. Board of County Supervisors, 135 Miss. 268, 99 So. 563; Harrison v. Turner, 116 Miss. 550, 77 So. 528. See, also, a recent vigorous application of the strong doctrine in a crim-

inal case, Mitchell v. State, 179 Miss. 814, 176 So. 743, 121 A.L.R. 258.

But Tennessee law, not Mississippi law, governs. It may be found that the plea of res adjudicata must be sustained upon the diverse doctrine of Jordan v. Johns, supra, on the one hand, and Pile v. Pile, supra, and similar cases on the other. The record of the proceedings in the state court in the case of Walter D. Garland et al. v. Columbian Mutual Life Insurance Company,[1] supra, will be now examined and discussed.

On May 7, 1937, Walter D. Garland and four other citizens of Mississippi filed an original bill in the Chancery Court of Shelby County, Tennessee, against the Columbian Mutual Life Insurance Company, on behalf of themselves and "all holders of covenants of insurance issued prior to August 9, 1926." The bill alleged, inter alia, that complainants were all holders of fraternal beneficiary life insurance covenants, issued prior to August 9, 1926, guaranteed by the defendant; that on August 9, 1926, while entirely solvent and at a time when it had been successfully assessing adequate premium rates, the Columbian Mutual Life Assurance Society (subsequently merged into the defendant company), through its National Council, unanimously adopted a resolution authorizing and directing an amendment to its Articles of Incorporation converting the Society from a fraternal benefit society into a mutual life and disability insurance company.

The bill asserted that "all assets, monies, credits and property of every kind held by said Columbian Mutual Life Assurance Society were trust funds held by said company for the sole benefit of the beneficiary members who had contributed thereto and could never be used for any purpose but for the payment of claims due on said beneficiary covenants"; and that the holders of fraternal covenants "were not liable for any assessments of premium beyond the premium expressly stated in their policy contract."

It was stated that, notwithstanding these facts, "the Directors of the Columbian Mutual Life Insurance Company did on March 16, 1937, adopt a resolution levying an assessment, making the same a lien upon and against all covenants issued by the Eminent Household of Columbian Woodmen, the Columbian Woodmen of

---

[1] No opinion for publication.

Mississippi, or the Columbian Mutual Life Assurance Society, prior to August 9, 1926, in an amount equal to one hundred per cent of the life reserve, less indebtedness, or the net equity of said covenants as·of March 16, 1937"; and that "said assessment is now a lien bearing five per cent interest upon the covenants of insurance of each of your complainants and all other policy holders similarly situated."

The bill charged that the assessment of fraternal policy holders, as described, is "absolutely null and void", being ultra vires the Board of Directors, contrary to the Charter and By-Laws of the company and to the terms of the contracts between the company and "your complainants and others similarly situated"; that the assessment is "discriminatory" and "void", because "creating a distinction between individuals of the same class", and that it is "an absolute confiscation of the property of your complainants and others similarly situated", in violation Article 1, Section 10, and also the Fourteenth Amendment of the Constitution of the United States, U.S.C.A., as well as in violation of the bill of rights of the Constitution of the State of Mississippi.

The bill maintained that the complainants have no adequate remedy at law, being compelled either to pay the unlawful assessment, or to permit it to remain a policy-lien at five per cent interest, compounded annually; that they "are entitled at the present time to enjoy the rights and benefits and privileges conferred upon them by their covenants of insurance including loan values, cash surrender values, old age provisions, disability provisions, etc.," and that "the prevention of a multiplicity of suits requires that one suit be brought for the benefit of all policy holders who are deprived of their rights by said attempted assessment."

It was averred that the defendant insurance company is insolvent as a result of inefficient management and poor investments and not by reason of inadequate rates; and "that all funds, credits, property and assets of the defendant company are trust funds held by said company for the sole benefit of its policy holders equally in proportion to their equities therein."

The bill prayed for injunction, receivership, accounting, and liquidation and distribution of the assets of the defendant company "equitably among its policy holders". The injunction sought was to restrain the defendant from "disposing of any of the assets of the company and from entering into any further contracts of insurance and from paying further losses·or benefits of any kind or character."

The bill prayed, further, "that the attempted resolutions of the Board of Directors of the defendant company be declared null and void and that it be ordered by this court that no lien be imposed against the covenants of complainants and others similarly situated because thereof, and that all of the assets of the defendant company be declared a trust fund for the sole benefit of all the policy holders."

In addition to a prayer for general relief, it is important to observe the exact language of the eighth numbered paragraph of the bill of complaint: "If complainants are mistaken as to their rights to a receivership and a liquidation of the assets of the defendant company and a distribution thereof, that the directors of the defendant company be ordered and directed to remove from against the complainants' covenants and against the covenants of those similarly situated the lien attempted to be imposed by the resolution of March 16, 1937, and that the defendant by decree of this court be compelled specifically to perform said contracts by restoring to complainants and others similarly situated all loan and non-forfeiture values, etc., as provided in said covenants."

The original bill of complaint in the Garland case was amended on July 5 and again on July 6, 1937.

It will be convincing evidence of parallelism with the subject matter of the instant suit to quote in haec verba certain paragraphs embraced in these amendments, as follows:

"Such attempted assessment is so discriminatory and inequitable as to be voidable and such as to afford the complainants and others similarly situated grounds for the equitable relief herein asked; said attempted assessment is not equally or ratably distributed between the Fraternal Certificate holders and the Mutual Policy holders, both beneficiaries of the same trust fund; and it is not equally or ratably distributed between the various Fraternal Certificate holders, beneficiaries of such trust fund, but is an arbitrary seizure of all of the reserve of Fraternal Certificate holders in the hands of the defendant on the date of its attempted levy." Record in Garland v. Columbian Mutual Life Insur-

ance Co., No. 42370 R. D. Chancery Court of Shelby County, Tennessee, pages 154, 155.

*Discrimination charged:*

"Furthermore, said attempted act of the Board of Directors of said company is discriminatory, said assessment creating a distinction between individuals of the same class and equal expectation of life, and is therefore void". Garland Record, page 148.

*Confiscation charged:*

"That said attempted assessment is void as destroying vested rights of these complainants and others similarly situated, and furthermore, said assessment is manifestly unfair and unreasonable and completely deprives complainants and others similarly situated of their rights and property and amounts to an absolute repudiation of the company's obligation and to an absolute confiscation of the property of these complainants and others similarly situated." Garland Record, page 148.

Several intervening petitions were filed, containing charges against the defendant company of the same tenor and character as those made in the original bill and amendments.

The comprehensive answer of the defendant denied that the charter amendment, converting the company into a mutual, in any way changed the rights and obligations of fraternal members under their covenants. It was admitted that after August 9, 1926, no further fraternal policies, but only mutual policies providing for fixed premiums were issued. It was denied that the assessment levied by the board of directors on March 16, 1937, pursuant to the notice of the Insurance Commissioner of Mississippi of the necessity therefor was illegal, unfair, unreasonable, violative of contracts with complainants, unauthorized, discriminatory, or confiscatory, or that it was void as depriving any member of vested rights. The answer detailed the examination, finding and conclusion of the Insurance Commissioner, showing the impairment of the capital of the company and the necessity for the provision for the deficit by assessment of the fraternal members. The legality of the assessment under Mississippi law was elaborately pleaded. The answer denied that the complainants were entitled to an injunction, an accounting, a receiver, "or to any other relief under and by virtue of the allegations of the bill or otherwise",

and prayed that the respondent be dismissed with its reasonable cost.

On July 9, 1937, the Chancellor entered a decree in which it was recited that the cause had been heard upon the full record, including the original bill and amendments and intervening petitions and answers of the defendant to the same; all exhibits and stipulations as to their authenticity; stipulations that either party might read and rely upon any and all pertinent Mississippi statutes, decisions, and constitutional provisions, without formal certification or reading into the record; statements and admissions of solicitors in open court as to expected proof (which by agreement were made a part of the record by bill of exceptions), and upon arguments upon questions of law presented by the record. The decree recited that "the proof which complainants' counsel stated that they would offer in support of the bill of complaint and intervening petitions would be insufficient to make out a case and would unnecessarily consume the time of the court."

Lengthy quotation from the decree seems essential to convey with clarity its comprehensive coverage of the same issues tendered in the instant suit.

The decree of the Chancellor provided:

"That it appears to the Court that there was a deficiency in assets of the defendant Columbian Mutual Life Insurance Company, as of March 16, 1937, as found by the examination made by the Insurance Departments of the State of Mississippi, the State of Tennessee, and the State of Alabama, in the amount of at least $1,886,000.00, and the solicitors for complainants and intervening petitioners had admitted, in open court, that the finding of said insurance departments, as a result of said examination relative to said deficiency, was accurate and that no dispute was made by or on behalf of complainants and intervening petitioners, as to that fact, the objections of complainants and intervening petitioners being as to the legality of said assessment resulting from said deficiency, and the legality of levying all of said assessments against the fraternal members of defendant;

"That it appears further to the Court that complainants, the intervening petitioners and all other fraternal covenant or certificate holders similarly situated, as members of defendant, are clearly liable for assessments by virtue of their fraternal

benefit certificates or covenants and the fraternal statutes of the State of Mississippi, the Constitution and By-Laws and all amendments thereof of the Columbian Mutual Life Assurance Society, and their applications for membership, but that the members of defendant, holding mutual life and disability policies, issued subsequent to August 9, 1926, are not subject or liable to assessment under the provisions of their contracts, the law, and the By-Laws of the defendant.

"It further appears to the Court that it was necessary, under the finding of the Insurance Commissioner of the State of Mississippi, concurred in by the Commissioner of Insurance and Banking of Tennessee, the Superintendent of Insurance of the State of Alabama, and the Attorney-General of the State of Mississippi, to make up the aforesaid deficiency immediately—as of March 16, 1937—as provided for and in accordance with the statutes of the State of Mississippi relating to fraternal benefit societies and to mutual life and disability insurance companies;

"It further appears to the Court that the defendant's Board of Directors, on March 16, 1937, by resolution, filed as an exhibit to the original bill herein, complied with the finding of the Insurance Commissioner of the State of Mississippi, and made up the aforesaid deficiency in assets by an assessment, as a lien, upon and against all fraternal covenants and certificates issued by the Eminent Household of Columbian Woodmen, the Columbian Woodmen of Mississippi, and the Columbian Mutual Life Assurance Society, prior to August 9, 1926, in an amount equal to one hundred per cent of the life reserve, less indebtedness, or the net equity of said covenants as of March 16, 1937, as fully set forth in the aforesaid resolution of defendant's Board of Directors, exhibited with the original bill;

"It further appears to the Court that, under the Constitution and By-Laws of the Columbian Mutual Life Assurance Society the National Council was the supreme governing body of said corporation and that when said society converted or transferred, by amendment to its Charter, into defendant as a mutual life and disability company, under the laws of the State of Mississippi, as in such cases made and provided, all the right, power and authority of said National Council ceased to exist and were, under and by virtue of the law, the amendment to the Charter and the new By-Laws which were adopted, transferred to and vested in defendant's Board of Directors which was given the right, power and authority to deal with and finally determine any and all matters relating to the making of an assessment on and upon any and all members of defendant, liable to assessment, as provided by the statutory laws, governing both fraternal benefit societies and mutual life and disability insurance companies, of the State of Mississippi;

"And it further appears to the Court that none of the grounds or complaints, made by complainants and intervening petitioners as to the legality of the aforesaid assessment made on March 16, 1937, are well taken, and that all of the complaints or contentions made and set forth in the pleadings are without merit and are overruled and disallowed, the Court being of opinion that the aforesaid assessment was legal, was not unreasonable, was not discriminatory, was not arbitrary, but was, in every way, proper, legal, and is now binding and in full force and effect upon and against complainants and intervening petitioners and all others similarly situated;

"It is therefore ordered adjudged and decreed by the Court that the aforesaid assessment made by defendant's Board of Directors on March 16, 1937, by the adoption of the resolution filed herein as exhibit to complainants' original bill on or upon and against all covenants issued by the Eminent Household of Columbian Woodmen, the Columbian Woodmen of Mississippi, and the Columbian Mutual Life Assurance Society prior to August 9, 1926 in an amount equal to 100% of the life reserve, less indebtedness or the net equity of said covenants as of March 16, 1937, was proper, legal and binding upon complainants and intervening petitioners; and is binding on all others similarly situated and their respective covenants or certificates of insurance, so far as the questions presented on this record are concerned.

"It is further ordered, adjudged and decreed by the Court that complainants and intervening petitioners are not entitled, on the merits of this cause, to recover any relief or to have any adjudication by this Court in their favor on any of the matters and things set forth in their pleadings and that their original bill, as amended, and the petitions filed herein should be and the same are hereby dismissed, with prejudice,

at the cost of said complainants and petitioners and their sureties on their prosecution bonds, for which let execution issue."

Astute counsel for the complainants in the case here for decision seek to escape the effect of the decree in the Garland case upon the ground that the Garland suit was brought to enforce rights claimed as *mutual policy holders,* while the present suit is for the adjudication of rights asserted as *fraternal covenant holders.* The difference seems without a valid distinction in juridical effect. Regardless of what they called themselves, their position as fraternal members fully appeared in the Garland suit, and their liability to assessment as such was fully and finally adjudicated on a record of facts, which has not been substantially amplified by the bill of complaint in the present suit.

In his opening statement in the Garland case, the attorney for the complainants said: "Now the purpose of this bill is to remove these liens (referring to the assessment levied upon the fraternal covenant holders). We say they are clouds upon the title, and a cloud upon our right to our stipulated cash surrender value, and we are applying to this court to strike these clouds from our title. We say they are illegal in whole and in part. We say that it is a lien which the Board of Directors of this new company had no right to place on these fraternal policy holders, and that your Honor remove this cloud upon the title. Now, if to accomplish that end, if that will result in a condition of insolvency of this company, then we ask for the appointment of a receiver. If, however, it does not render it insolvent, of course we do not desire a receiver at all." Garland Record, pages 209, 210.

And again, the attorney for complainants stated: "The first issue raised here is the right of the defendant under the fraternal law to make this assessment, and our position is that to properly go into that matter, that it will require an accounting, in order to determine the rights between the mutuals and the fraternal policy holders. We insist, your Honor, that is the first matter really that should here be determined. Now, your Honor, what the defendant, the Columbian Mutual Life Insurance Company here, what it has done, they have cut the garment to fit the cloth, and they take the position here that they are entitled to make up the deficiency in this manner, the legality of which is here involved." Garland Record, page 232.

As shown above, the Chancellor unequivocally decreed that "all of the complaints or contentions made and set forth in the pleadings are without merit and are overruled and disallowed, the Court being of opinion that the aforesaid assessment was legal, was not unreasonable, was not discriminatory, was not arbitrary, but was, in every way, proper, legal and is now binding and in full force and effect upon and against complainants and intervening petitioners and all others similarly situated." Garland Record, page 170.

The decree of the Chancery Court of Shelby County was "in all things affirmed" by the Supreme Court of Tennessee at its December term, 1937; and on petition for rehearing, the Supreme Court expurged from its opinion certain matter "immaterial to the decision", and which "constituted no part of the predicate for the judgment affirming the Chancellor"; and overruled, at the cost of complainants, the petition to rehear as without merit in all other respects.

Among the included matter which the Supreme Court thus declared without merit was the fourteenth ground of the petition for rehearing, stated in these words: "Even admitting as true and correct each holding of the court in its opinion, still, complainants are entitled to relief herein, namely, an accounting for trust funds under sections 352 and 353 of the by-laws of the Columbian Mutual Life Assurance Society."

The two sections of the by-laws cited provide for the apportionment of all income from fraternal members to the beneficiary fund sufficient to care for all claims which would accrue under beneficiary covenants and to maintain reserves under such covenants; and provide further that "All the moneys, credits, properties of every kind composing the Beneficiary Fund of the Society are hereby declared to be Trust Funds, and, as such, to be held for the sole benefit of those who contribute thereto"; and provide, also, that no part of the Beneficiary Fund shall ever be used for any purpose except the payment of claims due on beneficiary covenants.

An inspection of certain passages in the brief of the complainants on the petition for a rehearing in the Garland case reveals that the same arguments were there

made which have been urged here, including the impressive argument of the inequity resultant from the assessment lien levied against the contracts of the fraternal covenant holders in that one with a thousand dollar policy who had borrowed the full cash surrender value was assessed nothing, while another holding a like policy, issued simultaneously, who had not borrowed on his policy, was assessed its full cash surrender value. Indeed, it is apparent that no arguments have been adduced in the case on trial which were not presented either on the original hearing or in support of the petition to rehear in the Garland case.

In its carefully written but unpublished fifteen-page opinion, the Supreme Court of Tennessee states that the "complainants are holders of fraternal covenants, and by their bill challenge the validity of the assessment made under the resolution of March 16, 1937", and that they "are not here seeking individual relief, but are suing as a class seeking to avoid the assessment made by the Board of Directors pursuant to administrative findings made by the Insurance Commissioner of Mississippi and concurred in by the Insurance Commissioners of Tennessee and Alabama."

The court painstakingly reviews the history of the defendant company, its pertinent Charter and By-Law provisions, and its resolutions and contracts, the applicable Mississippi statutes, the actions of the insurance commissioner and the directors of the company, and finds that the holders of fraternal contracts were liable to assessment and that "the assessment made by the Board of Directors, on the order of the Insurance Commissioner of Mississippi, was violative of no contract rights of complainants."

The court asserted that "the amount of the assessment cannot be held unreasonable, for any less amount would not have satisfied the deficiency", and "to refuse to impose the assessment at all would have resulted in the cessation of business and receivership, with consequent disaster to the members, including complainants." The court added the succinct quotation: "No one can have a vested right in disaster." "However", said the court, "the fraternal contracts did not create any vested rights in the fraternal members in or to the property of the organization as against the association itself."

The opinion concluded: "We have undertaken to give full faith and credit to the various statutes of the State of Mississippi applicable to the controversy here presented, and to measure the rights and obligations of the respective parties thereby. After a careful consideration of the questions made by the assignments of error, we are constrained to overrule the same and hold the assessment complained of to be valid and not arbitrary or violative of vested rights of complainants, or violative of any statute of the State of Mississippi, or of the Constitution of that State or of the Constitution of the United States. The decree of the chancellor is affirmed, and complainants will pay the costs of the appeal."

Upon either theory of the Tennessee law, with respect to the doctrine of res adjudicata, namely, that expressed in Jordan v. Johns, 168 Tenn. 525, 79 S.W.2d 798, supra, or that previously reasoned in Pile v. Pile, 134 Tenn. 370, 183 S.W. 1004, and the Tennessee decisions of like import heretofore cited, the conclusion cannot be escaped upon study of the record in the Garland case that the subject matter of the instant suit is identical, in all material aspects, with that determined by the state court against the rights claimed and the issues tendered by the plaintiffs herein.

Accordingly, the plea of res adjudicata of the defendant is sustained, and the complaint is dismissed with costs.