**WAYBRIGHT et al. v. COLUMBIAN MUT. LIFE INS. CO.**

No. 8680.

Circuit Court of Appeals, Sixth Circuit.

Aug. 15, 1941.

Hillsman Taylor, of Memphis, Tenn. (Albert Carruthers, of Memphis, Tenn., Charles G. Revelle, of Los Angeles, Cal., and Hillsman Taylor, of Memphis, Tenn., on the brief), for appellants.

Scott Fitzhugh, of Memphis, Tenn., and J. Morgan Stevens, of Jackson, Miss. (Fitzhugh, Vaden & Gordon, of Memphis, Tenn., and Stevens & Stevens, of Jackson, Miss., on the brief), for appellee.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

SIMONS, Circuit Judge.

In a class action brought by a group of fraternal covenant or certificate holders to require an accounting by the appellee of its affairs, to secure an adjudication of the invalidity of an assessment made upon the members of the class, or, in the alternative, a decree that the proceeds of the assessment constitute a trust fund for the benefit of the covenant holders, the court dismissed the complaint on the ground that the issues had already been decided by the Supreme Court of Tennessee in a similar class action in the unreported case of Garland v. Columbian Mutual Life Insurance Company.[1] It is agreed that the only question raised by this appeal involves the scope of the doctrine of res judicata under Tennessee law, and whether it has been correctly applied.

The appellee was incorporated in 1919 under the laws of Mississippi as a fraternal benefit society under the style "Columbian Woodmen of Mississippi." In 1921 its name was changed to "The Columbian Mutual Life Assurance Society" and several other fraternal societies were merged with it. It continued thereafter to operate as a fraternal benefit society with a large number of its covenants and certificates held by persons in Mississippi, Louisiana, Tennessee and other states. On August 9, 1926, it amended its articles of incorporation converting the society from a fraternal benefit society to a mutual life and disability insurance company, and adopted its present designation. Thereafter no further fraternal covenants were issued and all subsequent policies were of a fixed level premium form.

In March, 1937, the insurance commissioners of Mississippi, Alabama and Tennessee conducted an examination of the records of the company and found a deficit of assets under liabilities to the extent of $1,886,000, whereupon the insurance commissioner of Mississippi required the company to make an assessment similar to policy loans to be designated as a lien equal to 100% of the life reserve less indebtedness, or net equity of fraternal covenants as of March 16, 1937, to be on the basis of outstanding covenants plus deficiency reserve. On March 16, 1937, the board of directors, in response to the order of the insurance commissioner, by appropriate resolution levied the assessment, declared it a lien upon outstanding fraternal covenants, and directed that it be set up as an asset of the company. The imposition of the assessment upon fraternal covenants was sufficient to wipe out the deficit and create a small surplus.

Thereupon Garland and others, holders of fraternal covenants, filed their bill in the Shelby County Chancery Court, challenging the validity of the assessment, praying for an injunction, a receiver, an accounting, an adjudication of the invalidity of the assessment and a decree for all their interests in the assets of the company upon its final liquidation. If mistaken in their rights to receivership, liquidation and distribution, the complainants prayed in the alternative, the removal of the attempted lien and a decree for the specific performance of their contracts according to the terms therein contained. The bill was dismissed with prejudice, and upon appeal to the Supreme Court of Tennessee the decree of the Chancery Court was affirmed and a petition for rehearing denied.

Subsequently other covenant holders brought the present suit in the District Court of the United States, likewise as a class action on behalf of all persons holding fraternal or beneficiary covenants and certificates issued either by the original society, or the other fraternals merged with it. Their complaint likewise assailed the validity of the assessment, though on other grounds, and alleged that the provisions of the amendment which converted the fraternal society to a mutual life company made all persons holding fraternal covenants a separate and distinct class with no change in their rights, duties, or obligations as determined by their covenants, and that the company and its officers thereby became trustees for this class, with a duty to keep a separate account of the funds, credits and

---

[1] No opinion for publication.

property of the covenant holders, to equitably distribute and prorate expenses as between the covenant holders and the mutual policy holders, and to apply the assets of the separate fund to the use and benefit of the covenant holders and to the payment of claims on the covenants and for the accumulating of a reserve therefor. It alleged that in disregard of such duties the directors had wrongfully mingled the assets of the covenant holders with other assets, and had wrongfully misapplied their funds to the meeting of deficits and eliminating impairments in the assets and financial condition of the mutual members. The plaintiffs prayed for an accounting, an adjudication of the assessment as discriminatory, illegal, excessive and invalid, or, in the alternative, that its lien and its avails be declared the sole and exclusive asset of the covenant holders, to be credited exclusively to them and to be applied to their sole use and benefit, with no part thereof to be credited to or used for any other purpose or for use and benefit of any other persons. The bill was met by the plea of res judicata based upon the decree of the Chancery Court of Shelby County in the Garland case as affirmed by the Supreme Court of Tennessee.

The District Court undertook a careful study of the opinions and decrees in the Garland case, gave consideration to the entire record in the state court proceeding including the briefs of counsel therein, both upon the original hearing and upon the petition for rehearing, and concluded that the arguments made in the instant case disclosed the issues raised in the two proceedings to be substantially identical. Its opinion sustaining the plea of res judicata and dismissing the bill is reported in 30 F.Supp. 885.

The question of res judicata is to be determined by reference to state law, Oklahoma Packing Co. v. Oklahoma Gas & Electric Co., 309 U.S. 4, 8, 60 S.Ct. 215, 84 L.Ed. 537. The District Judge gave careful consideration to the decisions of the Supreme Court of Tennessee defining the scope of the doctrine in that state. The cases are fully cited in his opinion and repetition of citations appears to us unnecessary. He concluded that upon either interpretation of Tennessee law advanced, i. e., that the doctrine is to be confined narrowly so that a prior judgment is decisive only as to matters actually at issue and does not carry finality beyond "the very point brought directly in issue by the pleadings," [30 F.Supp. 885, 889], a view supported by cases of which Jordan v. Johns, 168 Tenn. 525, 534, 79 S.W.2d 798, is typical, or upon the broader and more usual concept of the doctrine, that there is an estoppel by judgment when issues which might have been determined in the earlier case are later raised as announced in Pile v. Pile, 134 Tenn. 370, 183 S.W. 1004, and decisions of like import, the conclusion can not be escaped that the subject matter of the present suit is, in all material aspects, identical with that determined by the state court in the Garland case.

Whether the conflict in Tennessee decisions at the time of adjudication below is real or merely apparent, it is unnecessary for us to decide. In Fransioli v. Podesta, 175 Tenn. 340, 134 S.W.2d 162, decided since the opinion below was announced, the Supreme Court of Tennessee quite clearly indicates that the rule of res judicata in that state is of the usual scope, and since we are constrained by Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327, to conform our decisions to the latest expression of state law, we consider the applicable doctrine as it is now applied in Tennessee, to be of the broader scope. So construing it, it is clear, from a comparison of the objectives of the earlier suit with those of the present action, that like issues are raised. Then, as now, an accounting was asked. Then, as now, adjudication of the assessment as invalid was sought. It is true that the grounds upon which invalidity was urged in the first suit have now been abandoned, and discrimination and confiscation are set up as the present basis for invalidity. Nevertheless the result sought is the same even though the reasons have changed. In both actions relief was pursued looking to the separation of the interests of the covenant holders from those of the policy holders. Technical definition aside, the rights asserted and the remedies invoked are identical.

We are not persuaded that differing issues are disclosed by the contention that in the first action the complainants sought relief as policy holders and that here they pursue rights as covenant holders. It is clear that the earlier action was a class action on the part of covenant holders, and for their use and benefit as such. They sought liquidation of the company and a distribution of its assets to them as their

248

interests might appear. They seek substantially the same relief here. It is immaterial that they now define their interests in the assets as growing out of a trust relationship. Differentiation of issues is not disclosed by mere definition. The court in the prior action held that "the fraternal contracts did not create any vested rights in the fraternal members in or to the property of the organization as against the association itself." Nor is there merit to the contention that the state court but construed obligations of the covenant holders and not their rights. The language of the Supreme Court opinion in the Garland case is precise—"We have undertaken * * * to measure the rights and obligations of the respective parties hereby. * * * After a careful consideration of the questions made by the assignments of error, we are constrained to overrule the same and hold the assessment complained of to be valid and not arbitrary or violative of vested rights of complainants."

The decree below is affirmed.