**NATIONAL LABOR RELATIONS BOARD
v. FEDERAL ENGINEERING CO.,
Inc., et al.**

No. 10030.

Circuit Court of Appeals, Sixth Circuit.

Feb. 6, 1946.

234

Harold Cranefield, of Detroit, Mich. (David A. Morse, Malcolm F. Halliday, A. Norman Somers, Ida Klaus, and Thomas C. Marshall, all of Washington, D. C., on the brief), for petitioner.

L. A. Keller, of Detroit, Mich. (Leonard A. Keller and Lewis & Watkins, all of Detroit, Mich., on the brief), for respondents.

Before ALLEN and MARTIN, Circuit Judges, and MILLER, District Judge.

MARTIN, Circuit Judge.

The National Labor Relations Board, in customary course under the statute, U.S. C.A. Title 29, § 151 et seq., petitions this court for enforcement, in entirety, of its order, entered February 14, 1945, against the respondents, a corporation and a co-partnership composed of four owners of all capital stock of the corporation, the Levines, three of whom are top officials and directors of the corporation.

The order of the Board, which will be detailed hereinafter, directs broadly that respondents cease and desist from unfair labor practices; from interfering in any manner with the right of their employees to form, join or assist two specified U. A. W.-C. I. O. unions; and that respondents offer reinstatement with back pay to two named employees and make them whole from losses of earnings sustained by reason of respondents' discrimination against them. The usual direction as to posting notices and notifying the Regional Director is included in the order.

The contention of respondents that the Wagner Act is not applicable to the corporation is obviously unsound. Upon abundant evidence, the Labor Board adopted the finding of the Trial Examiner that the corporation and the co-partnership are engaged in a single enterprise conducted by the same four individuals. Their actions as partners and as owners, directors and officers of the corporation in controlling the labor policies of the copartnership and committing the unfair labor practices found cannot be separated sensibly. The corporation owns the plant and fixtures and its affairs are so interrelated and intertwined with those of the co-partnership as to make it an essential party to this proceeding if effectual protection is to be afforded to the employees whose reinstatement with back pay has been ordered by the Board. See National Labor Relations Board v. Swift & Co., 6 Cir., 127 F.2d 30, 32; National Labor Relations Board v. Condenser Corp., 3 Cir., 128 F.2d 67, 71, 72; National Labor Relations Board v. Aluminum Products Co., 7 Cir., 120 F.2d 567, 569; National Labor Relations Board v. Adel Clay Products Co., 8 Cir., 134 F.2d 342, 346.

Nor do we find merit in the argument of respondents that the complaint in the case involving the discharge of Ralph Reichard, one of two employees ordered reinstated, should have been dismissed in consequence of the letter of June 16, 1944, written to the Regional Director by the complaining union, Local 157, withdrawing its charge and requesting dismissal of the complaint. The power of the National Labor Relations Board to prevent unfair labor practices is exclusive. Its function is to be performed in the public interest and not in vindication of private rights. The Board is vested with lawful discretion to determine whether a proceeding, when once instituted, may be abandoned. National Licorice Co. v. National Labor Relations Board, 309 U.S. 350, 362, 60 S.Ct. 569, 84 L.Ed. 799; National Labor Relations Board v. Prettyman, 6 Cir., 117 F.2d 786, 792. Cf. National Labor Relations Board v. General Motors Corporation, 7 Cir., 116 F.2d 306, 312.

The Federal Reports are already overburdened in Labor Board reviews with long factual opinions from all the circuits. In the instant controversy, we shall enter a cease and desist order against ourselves from repetition of the practice. We have often commented upon our curtailed power of review. In National Labor Relations Board v. Capitol Greyhound Lines, 6 Cir., 140 F.2d 754, 759, we said: "The Supreme Court has emphasized more than once the expertness of the National Labor Relations Board in the field of labor controversy; and the Courts of Appeal have been reminded, sometimes sharply, of their curtailed power of review. At this late date renewed citation of these decisions would seem idle. Certainly, if we have understood the Su-

preme Court's meaning, we are vested with no power to upset the findings and inferences of the Labor Board supported by the evidence in the instant case, even if our views were not in consonance with those of the Board."

The Act of Congress, itself, is unequivocal: "The findings of the Board as to the facts, if supported by evidence, shall * * * be conclusive," 29 U.S.C.A. § 160 (f); and the Supreme Court, in emphatic language, has said that it is of paramount importance that the courts should not encroach upon the exclusive power of the Board and substitute their judgment on disputed facts for that of the administrative tribunal. To do so has been declared to be an unwarranted "disregard of the statutory division of authority set up by Congress."

National Labor Relations Board v. Waterman Steamship Corp., 309 U.S. 206, 208, 226, 60 S.Ct. 493, 504, 84 L.Ed. 704. See also National Labor Relations Board v. Link-Belt Co., 311 U.S. 584, 597, 61 S.Ct. 358, 85 L.Ed. 368; National Labor Relations Board v. Nevada Consolidated Copper Corp., 316 U.S. 105, 62 S.Ct. 960, 86 L. Ed. 1305.

The Trial Examiner filed a thirty-two page Intermediate Report. The National Labor Relations Board adopted the findings, conclusions and recommendations of the Examiner with modifications, only strengthening the conclusions that respondents had indulged in unfair labor practices and had wrongfully discharged the two employees, Ralph Reichard and Henry Richter. The Board agreed with the Trial Examiner in crediting the testimony of Reichard and Richter when conflicting with that of other witnesses. It is the function of the Board and not that of this court to weigh the evidence. In the case of Richter, the evidence greatly preponderates against the truth of his deposition upon determinative matters. Accepting his testimony as true, however, the Board had before it evidence from which it could conclude that Richter was discharged discriminatorily because of his union activity in joining Local 889 (U. A. W.-C. I. O.), and in soliciting other office workers to join that union. Richter swore that office manager Saul Levine told him that the office workers needed no union and that "he would have no dealings whatsoever with any union."

That the discharge of Ralph Reichard was due to his union activities rather than to his inattention to duties has strong support in the proof. The important substance of his testimony is corroborated by other witnesses: that Dan Levine stated that Reichard was discharged because he was an agitator sent into the plant to organize for the U. A. W.-C. I. O.

Both the Trial Examiner and the Labor Board found that the respondents were not justified in discharging Reichard at the request of the Society of Tool and Die Craftsmen, with which they had a closed shop agreement from 1938 to 1942, for the reason that Reichard, with his dues paid, was a member in good standing of the Society at that time and that the agreement itself contained no provision justifying his discharge for activity in organizing Local 157, U. A. W.-C. I. O. This interpretation is fairly supported by the provisions of the closed shop agreement. All that was required of employees was "good standing" membership in the Society. There was no express prohibition against Society members joining and assisting an organized labor union. The Board found that in discharging Reichard "the respondents were motivated by hostility toward the C. I. O., and that the respondents seek to utilize the closed-shop contract in order to accomplish their unlawful purpose." Considering the whole record, there is a reasonable basis for this inference.

The Trial Examiner found and the Board adopted his finding that the activities of Reichard and his associates were consonant with the "full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection." We comprehend no valid reason for a quarrel with this finding, if the declared policy of the Act is to be broadly construed to effectuate its purpose.

One question is yet to be answered. Is the first numbered paragraph of the order of the Labor Board too broad in scope to be enforced in hæc verba? The questioned paragraph directs respondents to cease and desist from:

"1. (a) Discouraging membership in any labor organization of their employees by discharging or refusing to reinstate any of their employees or by discriminating in any manner with respect to their hire or tenure of employment or any term or condition of employment;

"(b) In any other manner interfering with, restraining, or coercing their employees in the exercise of the right to self-organization, to form, join, or assist Local 157, International Union, United Automobile, Aircraft and Agricultural Implement Workers of America (UAW-CIO), and International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, Industrial Office Workers Amalgamated Local 889 (UAW-CIO), or any other labor organization, to bargain collectively through representatives of their own choosing and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection, as guaranteed in Section 7 of the Act."

■ Even were paragraph 1(a) supra considered to fall within the justifiable limits defined in National Labor Relations Board v. Express Pub. Co., 312 U.S. 426, 430, 433, 437, 439, 61 S.Ct. 693, 85 L.Ed. 930, which we think it does not, the broad, blanket provisions of the paragraph are on the facts of this record plainly banned by the opinion of the Supreme Court in May Department Stores Company v. National Labor Relations Board, 66 S.Ct. 203, 210. With respect to enforcement of cease and desist orders of the Labor Board, the Supreme Court said: "The scope of injunctions which follow National Labor Relations Board determinations is important to employer and employee. While contempt proceedings can be instituted only by the Board and in the public interest, the possibility of contempt penalties by the court for future Labor Act violations adds sufficient additional sanctions to make material the difference between enjoined and non-enjoined employer activities. The decision in the Express Publishing Company case emphasized this issue. * * * We think that the Board has the same power to determine the needed scope of cease and desist orders under the National Labor Relations Act that courts have, when authorized to issue injunctions, in other litigation. That power of the Board is subject to review under Section 10. While the Board has been delegated initially the exclusive authority to prevent unfair labor practices, courts, which are called upon to enforce such orders by their own decrees, may examine its scope to see whether on the evidence they go so beyond the authority of the Board as to require modification as a matter of law before enforcement."

The Supreme Court directed the deletion of the following paragraph from the cease and desist order of the Labor Board: "1. (b) In any other manner interfering with, restraining, or coercing its employees who are referred to in paragraph 1(a) in the exercise of their right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection, as guaranteed in Section 7 of the National Labor Relations Act." It was further directed that there be added to paragraph 1(a) of the Board's cease and desist order, the following clause, "or from any other acts in any manner interfering with the representative's efforts to negotiate for or represent the above named employees as bargaining agent." The amended paragraph had ordered the department store to cease and desist from refusing to bargain collectively with a specified C. I. O. union as the exclusive representative of described groups of employees.

■ In conformity with the controlling authority of the May Department Stores Company opinion, as we construe its meaning and applicability, paragraph 1(a) of the Labor Board's order in the instant case is directed to be stricken and paragraph 1(b) of the order to be amended so as to read as follows: "1. Cease and desist from in any manner interfering with, restraining, or coercing their employees in the exercise of the right to self-organization, to form, join, or assist Local 157, International Union, United Automobile, Aircraft and Agricultural Implement Workers of America (UAW-CIO), and International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, Industrial Office Workers Amalgamated Local 889 (UAW-CIO), or from any other acts in any manner interfering with the representation by these unions of their employees as bargaining agent."

As thus modified, the order of the National Labor Relations Board is directed to be enforced.