Sol. D. Kapelsohn, of Newark, N. J. (Isserman, Isserman & Kapelsohn, of Newark, N. J., on the brief), for appellant.

Edward F. Rosiny, of New York City (Robert Scherling, of Newark, N. J., on the brief), for appellees.

Irving Abramson, of New York City, for National C. I. O. Community Services Committee, amicus curiæ.

Before MARIS, McLAUGHLIN, and O'CONNELL, Circuit Judges.

## GRASSO v. CROWHURST et al.

### No. 8966.

Circuit Court of Appeals, Third Circuit.

Argued Feb. 5, 1946.

Decided Feb. 26, 1946.

Rehearing Denied April 23, 1946.

McLAUGHLIN, Circuit Judge.

Appellant was discharged from the United States Army on October 5, 1943. At the time he entered military service and for the seven or eight years immediately prior thereto, he had been employed as a tacker in appellees' leather factory. On October 25th or 29th, 1943 he called at the factory and talked with Charles M. Crowhurst, one of the appellees. It is undisputed that he asked the latter for a leave of absence. The District Court finding that Grasso desired an indefinite leave of absence is correct as far as it goes. Crowhurst testified that Grasso told him he was taking treatment for his feet. On cross examination the following question was put to Crowhurst: "Didn't you ask him (Grasso) when his requested leave of absence might be expected to terminate?" Crowhurst answered: "I asked him if he could set some definite time because indefinite was quite a long time, or just any time, and he said, 'Well, at least a year.'" Crowhurst stated that he told Grasso that an indefinite leave of absence was "out" and that " * * we had agreed with the union that leave of absence would be granted only on recommendation of the company's doctor after physical examination." He said he asked Grasso to go to Dr. Crecca, the plant physician, to which Grasso agreed. Grasso's

version is that Crowhurst said "* * * before we could even discuss a leave of absence or your job back, you will have to go to the company doctor." The bookkeeper, Mrs. Hammell, testified that Crowhurst stated to Grasso that "* * * he couldn't give him an indefinite leave of absence and the only leave of absence he could give him was a definite leave of absence, due to a physical examination by our company doctor, which had been the agreement between the union and the company for any definite leave of absence."

Dr. Crecca examined Grasso on October 29, 1943 and pronounced him unable to work as a tacker because of physical disability. Grasso testified, and it is not denied, that Dr. Crecca told him that "* * * my physical condition was very poor, that I wouldn't be able to work any more, * * *." The answer of the respondents sets out that Dr. Crecca examined Grasso and thereafter "* * * reported to the respondents that the petitioner was suffering from third degree Pes Planus (flat feet) which disqualified him from performing the duties of a tacker without both serious harm and injury to himself."

Later, appellant had another talk with Charles Crowhurst. He gives one version of that conversation and Crowhurst and Mrs. Hammell another. As to what was discussed the District Judge decided that "* * * the conclusion here must favor the side where corroboration appears. Therefore I find that at the second meeting of the parties, petitioner asked for a release and not for re-employment."

There was considerable testimony from both sides on the question of appellant's disability. The Trial Judge concluded that he either had "* * * congenital flat feet or a condition so closely akin thereto as to present the same symptoms." The Court decided that from a physical standpoint "* * * he is not disqualified for his position as a tacker in respondents' tannery."

On the second point, whether Grasso applied for re-employment within the intent and meaning of the particular part of the Selective Training and Service Act as it then stood, 50 U.S.C.A.Appendix § 308(b) (B),[1] The Court said [58 F.Supp. 857, 860].

"Does the request for a leave of absence standing alone include a request for a return to a position? Obviously, to ask for a leave would imply that the one making such a request was presently employed in a position from which the leave is sought. *My view of it is that such a request amounts to nothing more than asking the employer to simultaneously reinstate the applicant and give him an immediate vacation.* It is not a request for immediate reemployment. To construe it otherwise would be to permit the applicant to extend the forty day statutory limitation fixed by the Act, therefore, it cannot be found that petitioner applied for reemployment on his first appearance before respondent on October 29, 1943." (Emphasis ours.)

The Court then held:

"Weighing all the evidence and considering the probabilities, I am constrained to find that petitioner failed to comply with that provision of the law which required him to make application for reemployment within forty days after he was released from military service. An order to this effect will be entered."

Assuming, as found by the Court below, that Grasso desired an indefinite leave, pressed by Crowhurst according to the latter, Grasso fixed the time he needed as at least a year. He was told by his employer that he could not have an indefinite leave of absence because the company's arrangement with the union provided only for definite leaves based on physical examination by the plant doctor. The employer therefore asked him to see Dr. Crecca. Whether or not Grasso's original application had a time limit is unimportant for by submitting to examination by the doctor he acquiesced in the conditions as detailed to

---

[1] Title 50 U.S.C.A., § 308 (b) at the time read:

"(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position, other than a temporary position, in the employ of any employer and who (1) receives such certificate, (2) is still qualified to perform the duties of such position, and (3) makes application for reemployment within forty days after he is relieved from such training and service—"

(Later the forty day period in (3) was increased to ninety days.)
* * * * * *
"(B) if such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so."

(No change)

him by Crowhurst. Dr. Crecca flatly denied Grasso's right to be employed, declaring him physically unfit for his job. He advised both the employer and Grasso of this. Appellees' brief asserts that Dr. Crecca refused to recommend that a leave of absence be granted to Grasso. There is nothing in the record to justify that statement.[2] Following the physical examination and its result came the second and last meeting between Grasso and Charles Crowhurst. According to the Trial Court what occurred was that Grasso asked for his release so that he would be free to seek other employment. Grasso obviously had accepted Dr. Crecca's verdict as final. Crowhurst just as obviously assumed that the doctor's opinion completely disposed of Grasso's employment with Crowhurst & Sons. There was no hint from him, that Dr. Crecca might be wrong or that there could be examinations by other medical authorities; not even a word of sympathy. Certainly there was no denial by Crowhurst of the application for leave. Later on November 23, 1943 the company wrote to the plant employees' union. That letter states that when Grasso first came in he asked for an indefinite leave of absence which was refused. It goes on to say that in order to check his story "* * * he was sent to the Company's physician who reported that from a medical standpoint, he could not be employed by the company." It then covers Grasso's second conversation with Crowhurst making no allusion to any refusal of a leave of absence at that time. From a careful examination of the entire record we find no support whatsoever for Finding of Fact #19 which reads: "That by reason of the findings and report of the said Dr. William D. Crecca, the respondent refused to grant a leave of absence to the petitioner." Our conclusion is borne out by what the Trial Court itself found to have happened at the final meeting between Crowhurst and Grasso.

Under the statute § 308(b) (2) if Grasso was physically unfit, he had no claim to his former position because a necessary condition for restoration of employment is that the applicant is still qualified to perform the duties of the particular post. So Gras-

so in effect was told he was not entitled to his old job. Quite justifiably he relied upon Dr. Crecca and Crowhurst. He had no occasion to suspect either their motives or their judgment. He was a returning veteran. He sought only his bare legal rights. He should have been able to confidently expect fair dealing. It was therefore entirely reasonable for him to accept the plant physician's opinion and to conclude from it that there was nothing remaining for him to do but return to his employer and obtain a release from his former position so that he could seek other work. If confirmation of this were needed, Crowhurst furnished it by his attitude. The miserable tragedy of it was that the company doctor was very wrong. Grasso, as found by the District Court, was physically capable of performing the required duties. The decision that he was unemployable directly deprived him of his position. It was peculiarly unfortunate in the light of the company's letter to the union, already mentioned, which was written after the statutory time had elapsed and which stated *"If Mr. Grasso were able to work, the company would be only too glad to reinstate him."* (Emphasis ours).

The lower Court while clearly holding that the request for leave of absence is an application for reinstatement is of the opinion that because it does not anticipate immediate work or at least work within the forty day period, it cannot be held to be an application for re-employment under the Act. This we think is a far too narrow construction of the statutory language "* * * makes application for reemployment."

The preamble to the Selective Service Act reads in part "* * * the obligations and privileges of military training and service should be shared generally in accordance with a fair and just system * *." 50 U.S.C.A.Appendix § 301. In Kay v. General Cable Corporation, 3 Cir., 144 F. 2d 653, at page 654, we said concerning the section of the Act here discussed:

"Every consideration of fairness and justice makes it imperative that the Statute should be construed as liberally as pos-

---

[2] Dr. Crecca testified that he advised Crowhurst & Sons by letter of Grasso's physical inability to work as a tacker. The letter is not in evidence. After the case was closed there was some discussion regarding it. Counsel for the appellees urged that it had been marked for identification. Counsel for the appellant after inspection of the letter denied this. In any event, the Court refused to admit it into evidence as there had been no opportunity to cross examine on its contents. The letter is not in or with the record.

sible so that military service should entail no greater set-back in the private pursuit or career of the returning soldier than is unavoidable. The question here presented, therefore, is not to be solved by the application of abstract tests or formulae; but the factors which usually determine the nature of a disputed relationship must be considered in the light of the purpose which Congress intended to accomplish."

In re Walker's Estate, Sur., 53 N.Y.S. 2d 106, at page 113, held that under Section 308 "The relationship of employer and employee had not been terminated by his (the employee's) induction into the United States Army."

 Grasso had been on a statutory furlough from his employment to the Army.[3] Once he was discharged he could no longer continue on that type of leave beyond the permitted forty days. Realizing this and having the idea he needed treatments for his feet to fit himself for his civilian occupation he reported to his employer and requested time to get himself in shape. This contemplated a different sort of leave of absence from that which he had enjoyed while away in the Army. He was in reality applying for the ordinary leave of absence granted civilian employees because: at the time he made his application he had been discharged from military service; he was within the forty day period; he was beyond doubt an employee of Crowhurst & Sons, subject to qualifying with respect to performance of his duties.[4]

Nowhere does it appear that Grasso would have declined his job unless he was first granted some time off. While Grasso's brief concedes that the appellees were under no statutory obligation to comply with his request for a leave, the point involved is not necessary to our decision and we do not pass upon it. If Grasso had been refused a leave he still would have had the opportunity of renewing his application for re-employment without attaching any terms to it. But he was not re-fused. He was turned over to the company doctor and no more was said about a leave of absence. Thereafter the employer, through Dr. Crecca and Crowhurst, convinced Grasso that he was all finished in his employment as a tacker for the appellees. That action was in derogation of appellant's right. Grasso had made timely application for re-employment. He has been found qualified to perform the duties of his old position. He comes squarely within the letter and spirit of the statute in question.

Reversed.

---

[3] Section 308 (c) of the Selective Training & Service Act reads:

"(C) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) shall be considered as having been on furlough or leave of absence during his period of training and service in the land or naval forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration."

[4] There was no contention by the employer of changed circumstances under Section 308 (b) (B) supra.