TRAILMOBILE CO. et al. v. WHIRLS.

No. 10189.

Circuit Court of Appeals, Sixth Circuit.

April 5, 1946.

Writ of Certiorari Granted June 10, 1946.

See 66 S.Ct. 1364.

Philip J. Schneider, of Cincinnati, Ohio (Waite, Schindel & Bayless, and Herbert Shaffer, all of Cincinnati, Ohio, on the brief), for Trailmobile Co.

Sol Goodman, of Cincinnati, Ohio, for C.I.O.

Byron B. Harlan, of Cincinnati, Ohio (Robert E. Marshall, of Cincinnati, Ohio, on the brief), for Lawrence Whirls.

Before SIMONS, MARTIN, and MILLER, Circuit Judges.

MARTIN, Circuit Judge.

Decision of this case requires interpretation of the reemployment provisions of the Selective Training and Service Act of 1940, 54 Stat. 885, U.S.C.A., Title 50, Appendix, § 301 et seq., and especially Sec. 308 thereof, as amended. The Act provides that the honorably discharged service man, who, in order to perform training and service by induction into the land or naval forces of the United States, left a permanent position with a private employer, shall, if still qualified to perform the duties of the position, upon making the required application for reemployment after his relief from training and service, be restored to such position "or to a position of like seniority, status, and pay, unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so." U.S.C.A. Title 50 Appendix, § 308 (a)(b)B.

The Act further provides in Section 308 (c) of the same Title: "Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) shall be considered as having been on furlough or leave of absence during his period of active military service, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was ordered into such service, and shall not be discharged from such position without cause within one year after such restoration."

The issuance squarely presented to us is whether, in the circumstances of this case, the mandate of the statute that a veteran shall be restored to his former job *without loss of seniority* permits a labor-union collective-bargaining agreement to whittle down his existing seniority at the time of his induction into the armed forces, in consequence of the further mandate of the statute that he shall not be *discharged without cause* within one year from the date of his reemployment.

Lawrence Whirls was employed by the Highland Body Manufacturing Company on February 8, 1935, and continued to be an employee of that corporation until he entered the military service of the United States on October 23, 1942. When he was inducted into the armed forces, Whirls was working under an employment contract by which seniority was to be determined from the last date of hiring and to be upon a departmental basis. The contract had been made with the company by the collective bargaining agent of all its employees.

Upon his honorable discharge from the armed forces of the United States, Whirls was reemployed by the Highland Company on May 3, 1943, in his former capacity in the Painting Department. The Highland Body Manufacturing Company was the wholly owned subsidiary of another corporation, The Trailmobile Company. Both

corporations manufactured the same commodities in separate plants, in. Cincinnati, Ohio, and had the same executive officers. The employees of Highland numbered approximately 100, while Trailmobile had 1,000 employees. The commodity production of Highland totalled about $1,500,000; that of Trailmobile approximated $12,000,-000.

After the reemployment of Whirls, a plan of liquidation of the Highland corporation was put into effect at the close of business on December 31, 1943. By that plan, Highland transferred and conveyed to The Trailmobile Company [1] all its property and assets and its goodwill as a going concern; and Trailmobile assumed all the liabilities and obligations of Highland and undertook the performance of its outs standing contracts. Upon the effective date of the consolidation or merger, January 1, 1944, the employees of the Highland Body Manufacturing Company were transferred to the service and payroll of The Trailmobile Company.

Prior to the consolidation, the employees of both companies had been affiliated with the American Federation of Labor. As found by the District Court, that organization ruled that all employees of both companies should, after the consolidation, rate seniority as of the date each had individually been employed by the respective companies. But, after the consolidation, the employees of The Trailmobile Company selected the C.I.O. as its collective bargaining agent to negotiate an employment agreement with Trailmobile for all its employees. This collective bargaining agreement, negotiated by C.I.O. with The Trailmobile Company, was consummated and evidenced in writing sometime between the latter part of June and the middle of July, 1944.[2]

Admittedly, this labor contract fixed the seniority rights of the former employees of Highland as commenced on January 1, 1944, regardless of the actual date of employment of each individual. Thus, Whirl's seniority, dating from his original employment by Highland on February 8, 1935, was cut off and his seniority reduced to commence as of January 1, 1944. This vital reduction in his well advanced seniority status was made, notwithstanding lip service given fair treatment of the veteran in the following clause found in the C.I.O. bargaining agreement: "Employees entering a military, naval or other combat service, or conscripted by the United States in time of war will be considered on a leave of absence and will maintain and accumulate all seniority rights without interruption.".

Represented by the United States Attorney, Whirls filed on September 18, 1945, in the United States District Court for the Southern District of Ohio a civil action against The Trailmobile Company. His complaint declared that, in violation of his lawful seniority status, he has been transferred from his position in the Painting Department, in which he had the highest seniority, to the Stock Department of The Trailmobile Company, where his pay is less; and that he has been deprived of his statutory rights to seniority as granted by Congress in the Selective Training and Service Act. Averring that he has been irreparably damaged and has no adequate remedy at law, he prayed a mandatory injunction directing his reinstatement by the defendant to his former position in its Painting Department and the restoration of his seniority to the date of his original employment, February 8, 1935.

After hearing the cause upon the oral stipulations of counsel and upon the exhibits introduced in evidence, the District Court filed findings of fact and conclusions of law; and entered judgment that Whirls "is entitled to a restoration of his seniority status among the employees of The Trailmobile Company as such seniority status

---

[1] The actual conveyances were made to the Trailer Company of America, but in the pleadings and in the recorded procedure in the court below that company has been treated as if identical with The Trailmobile Company. We presume that the identity results from a charter amendment changing the corporate name; but this does not affirmatively appear in the record. However that may be, all parties to this controversy have presented the case and the district judge has ruled and written as if The Trailer Company of America and the appellant Trailmobile Company are identical; so, on this appeal, we have so considered them.

[2] The record does not disclose the exact date of this collective bargaining agreement, as only excerpts from the contract are included in the record and the date of the execution of the exhibit is not shown. The briefs and the pleadings are not consistent as to the dates, which, of course, causes confusion, but the confusion relates to immaterial matter.

existed prior to his entry into the military service, and that, therefore, he is entitled to seniority as of date of hiring with The Highland Body Manufacturing Company, to wit: February 8, 1935." The judgment entered directed that The Trailmobile Company reinstate the seniority of Whirls as of February 8, 1935, and cancel his present seniority status as of January 1, 1944. From this judgment appeals have been vigorously pressed by The Trailmobile Company, and the International Union, United Automobile, Aircraft, Agricultural Implement Workers of America, U.A.W.-C.I.O., Local 390, which became a party defendant in the District Court by filing an intervening petition and participating in the proceedings there.

The appellant company insists that the legislative history of the Selective Training and Service Act does not justify the conclusion that Congress intended "to upset the established labor relations on the production front by requiring that labor contracts be construed to include provisions for placing returned World War II veterans in a position at the head of the seniority list." The veteran Whirls is not asking to be placed in a position at the head of the seniority list. He is merely ,complaining that, in consequence of a collective bargaining agreement between his employer and a labor union which he has been forced to join in order to retain his job, he has been unjustly and unlawfully deprived of his seniority status as it existed *at the time he was inducted into the armed forces.* '

█ It is a matter of common knowledge that there was much opposition to the original Selective Training and Service Act. Its existence was prolonged by Act of Congress by the slim margin of one vote in the House of Representatives. Concurrently with its enactment and reenactment —and perhaps essentially so—there was held forth to the young men who were to be inducted into military service the strongest assurance that the status quo of their employee relationships would be preserved as securely as was reasonably possible.

There can be no reasonable doubt that in the mind and heart of the Congress the provisions of Section 308(c) of the Act were designed and felt to be benevolent and avuncular to the young men compulsorily chosen for military training and service in time of national need. The Act expressly declared that it was imperative to increase and train the personnel of the armed forces of the United States; and that the obligations and privileges of military training and service should be shared generally in accordance with a fair and just system of selection.

█ The Act was passed by Congress and approved by the President with full knowledge of the existence of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. That Act was not amended; but surely it should not be presumed that Congress, in failing to amend the Wagner Act, intended to permit the concerted action of a collective bargaining agency and an employer to destroy or whittle down the statutory right of the returning soldier, sailor, airman and marine to restoration to seniority security in his job granted by the Selective Training and Service Act.

The right to collective bargaining and all the privileges conferred by the Wagner Act upon noncombatant workers may be well preserved by just recognition in their collective bargaining agreements of the fair intendment of the Selective Training and Service Act that those who went to war must be protected in their then-existing seniority positions as long as the Act remains in effect. If this principle is accepted, there need be no industrial strife between those who worked and fought and those who worked but did not fight—which counsel for the Union and for the Company so gloomily predict. In our view, the language of the pertinent section of the Selective Training and Service Act, in its context, impels acceptance of this principle.

Reading together Section 308(b)B and Section 308(c), the mandate of the statute is plain that the veteran shall be restored by his private employer to a position of like seniority, status, and pay, unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so; and the person so restored to such position shall be considered as having been on furlough or leave of absence during his period of military service and shall be so restored *without loss of seniority.* As we construe this language, it does not lie within the power of the employer to join with a collective bargaining agency, chosen by the majority of its employees .acting in pursuance of the provisions of the Wagner Act, in defeating the purpose and express language of the statute by bargaining away the seniority status of the veteran as it ex-

isted at the time of his induction into the armed forces.

The right of the veteran to be restored to his former position without loss of seniority is an independent and additional right, not to be impaired by the other protective benefits accorded him by the statute. His right to participation in insurance or other benefits offered by the employer, pursuant to established rules and practices relating to employees on furlough or leave of absence in effect at the time the veteran was ordered into military service, is *a separate and additional benefit.* Likewise, the last provision in paragraph (c), that the veteran "shall not be discharged from such position without cause within one year after such restoration," is a *separate, distinct and independent benefit* and should not be construed as limiting to one year the restoration of the veteran to his former position without loss of seniority. While he may not be discharged without cause within one year, if he is not so discharged he retains his seniority status as long as the Selective Training and Service Act in its present phraseology remains in effect. Collective bargaining agreements entered into pursuant to the terms of the Wagner Act must recognize the statutory right of the veteran to the seniority granted him by the selective service statute; and any such agreement which deprives him of that right is invalid to that extent.

In Market Company v. Hoffman, 101 U. S. 112, 115, 25 L.Ed. 782; the Supreme Court asserted that a court is not at liberty to construe any statute so as to deny effect to any part of its language; and that it is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word. See also Ex Parte Public National Bank of New York, 278 U.S. 101, 104, 49 S.Ct. 43, 73 L.Ed. 202; D. Ginsberg & Sons, Inc. v. Popkin, 285 U.S. 204, 208, 52 S.Ct. 322, 76 L.Ed. 704; McDonald v. Thompson, 305 U.S. 263, 266, 59 S.Ct. 176, 83 L.Ed. 164.

Nothing said in Crooks v. Harrelson, 282 U.S. 55, 59, 60, 51 S.Ct. 49, 75 L.Ed. 156, cited by appellants, gainsays the correctness of our construction of the statute in controversy. We are not here rejecting, but are carrying into effect, what we construe to be the literal meaning of the statute.

To ignore the plainly expressed intention of the Congress that the veteran should be restored to his position without loss of seniority would be to adopt an unreasonable and unwarranted construction that the clause of the statute protecting the veteran against discharge without cause within one year after his return to his position nullifies the statutory guarantee of the preservation of his seniority status contained in a preceding clause.

This court very recently expressed the opinion that an employee's right to seniority employment status may stem from a statute. In Elder v. New York Cent. R. R. Co., 6 Cir., 152 F.2d 361, 364, we said: "The seniority right of the man who toils, indoors or out, in a shop or in an office, is a most valuable economic security, of which he may not be unlawfully deprived. The right, however, is not inherent. *It must stem either from a statute* or a lawful administrative regulation made pursuant thereto, or from a contract between employer and employee, or from a collective bargaining agreement between employees and their employer. *In the absence of statute,* mere employment independent of the contractual conferring of special benefits upon those who have longest service records with the individual employer, creates no rights of seniority in retention in service or in reemployment. *In the instant case, the appellant rests upon no right created by statute,* but solely upon a collective bargaining agreement, made between the chosen representative of the workers and the employer." (Italics supplied.)

In the present controversy, Whirls holds a position diametrically opposite that of Elder. Whirls rests upon a right created by a Federal statute.

Appellants stress a recent District Court opinion, Olin Industries, Inc. v. Barnett, D.C.S.D.Ill., 1946, 64 F.Supp. 722, where Judge Briggle held that the employer need not advance the veteran beyond the seniority status which he would have attained had he not entered military service but had remained on his job. The employee whom he would replace, if so advanced, had held a supervisory position over the veteran at the time he was inducted into service. The case is broadly distinguishable on its facts from the case at bar.

Since the argument and submission of this case, the Second Circuit Court of Appeals, in a two-to-one decision promulgated March 4, 1946, in Fishgold v. Sullivan Dry Dock & Repair Corp., 154 F.2d 785, held

that a veteran who had been restored to his former position as required by the Selective Training and Service Act was properly laid off by his employer during the first year following his restoration on occasions when there was insufficient work for all the employees and the employer preferred non-veterans who had higher shop seniority than the veteran in consequence of an agreement between the employer and a labor union. The decision in the Fishgold case relates to a veteran's rights under the selective service statute during the first year of his reemployment. In this respect, the case is dissimilar from that at bar. We are frank to state, with highest deference, that we are not in general accord with the views expressed by Judge Hand for the majority of his court. However, we are in hearty accord with his broad-minded admonition: "The fact that we are ourselves not agreed cautions us that we should not be too sure of our conclusion; and obviously the really important matter is that the question should reach the Supreme Court as soon as possible."

■ Cognizance should be taken of the appropriately liberal interpretation of the returning veteran's rights to reemployment, assured by the Selective Training and Service Act, as evidenced by the opinion of Judge McLaughlin announced February 26, 1946, in Grasso v. Crowhurst, 3 Cir., 154 F.2d 208. See also Kay v. General Cable Corporation, 3 Cir., 144 F.2d 653.

■ We find no merit in the argument of appellants that the rights of the appellee Whirls to his seniority status are not protected by the Selective Training and Service Act, for the reason that the Highland Body Manufacturing Company, after conveying its property and assets to the appellant Trailmobile Company, surrendered its corporate existence. The contention is that Whirls became a new employee of the appellant Trailmobile Company. As found by the District Court, the appellant company, as it now exists after the complete absorption of its former subsidiary corporation, is, under the plan of consolidation, obliged to carry out and fulfill all the contracts and obligations of its subsidiary. The seniority status of Whirls guaranteed by the statute was equally binding upon the Trailmobile Company as upon the Highland Company. The two companies must be treated as identical, insofar

as the statutory rights of the veteran are concerned.

For analogous cases of corporate identity, as declared and dealt with under the National Labor Relations Act, see National Labor Relations Board v. Federal Engineering Company, et al., 6 Cir., 153 F.2d 233, decided February 6, 1946; National Labor Relations Board v. Swift & Co., 6 Cir., 127 F.2d 30, 32; National Labor Relations Board v. Condenser Corp., 3 Cir., 128 F.2d 67, 71, 72; National Labor Relations Board v. Aluminum Products Co., 7 Cir., 120 F.2d 567, 569; National Labor Relations Board v. Adel Clay Products Co., 8 Cir., 134 F.2d 342, 346.

Schenley Distillers Corporation v. United States et al., 66 S.Ct. 247, 249, does not support the position of appellants. In its opinion in that case the Supreme Court stated: "The fact that several corporations are used in carrying on one business does not relieve them of their several statutory obligations more than it relieves them of the taxes severally laid upon them."

■ Appellants contend that the rights which appellee seeks to have determined in this civil action in the federal court have been finally adjudicated against him by the Ohio state courts in Hess v. Trailer Company of America, Ohio App., 1945; Ohio Com.Pl., 17 Ohio Supp. 39.[3] It is insisted that the adjudication in the Hess case is binding upon this court under the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. The argument is fallacious. Decision in the instant controversy is governed by an Act of Congress. The subject matter before us does not pertain to general common law. The interpretation by the state court of the rights of a citizen under a federal statute is not binding upon the federal courts.

■ There is another ground for rejecting appellants' argument. Identity or community of interest of the parties in whose behalf a class action is brought is essential to its maintenance. In Hansberry v. Lee, 311 U.S. 32, 45, 61 S.Ct. 115, 119, 85 L.Ed. 22, 132 A.L.R. 741, the Chief Justice sketches the evolution of the class suit as an invention of equity; states the supporting reasons for its recognition; and points out that the selection of representatives for purposes of litigation "whose substantial interests are not necessarily or even prob-

---

3 Affirmed by Court of Appeals without opinion.

872

ably the same as those whom they are deemed to represent, does not afford that protection to absent parties which due process requires." An interesting and instructive annotation to the opinion of the Chief Justice appears in 132 A.L.R., Annotated 749 et seq.

A most scholarly and elucidating opinion upon class actions will be found in Weeks v. Bareco Oil Co., 7 Cir., 125 F.2d 84, 92, Judge Evans reviews and discusses the authorities. He quotes with approval the following statement in Waybright v. Columbian Mutual Life Ins. Co., D.C.W.D. Tenn., 30 F.Supp. 885, 888, in which the pertinent authorities pertaining to class suits had also been reviewed: "So, it seems settled law that a small minority of numerous interested parties may maintain a class suit in behalf of themselves and others, *similarly situated for an object common to them all.*" (Italics supplied.) The decree in the Waybright case was affirmed on appeal to this court: 6 Cir., 122 F.2d 245.

For other illustrative authorities asserting the necessity for identity of interest in class actions, see Redmond v. Commerce Trust Co., 8 Cir., 144 F.2d 140, 151; Citizens Banking Co. v. Monticello State Bank, 8 Cir., 143 F.2d 261, 264; Atwood v. National Bank of Lima, 6 Cir., 115 F.2d 861, 863.

■ The Hess case was not an appropriate class action in which the judgment entered could be binding upon Whirls, inasmuch as he was not similarly situated with all the parties in whose behalf the class action was instituted in the state court by Hess against the Trailer Company of America. The rights of the members of the class in whose behalf Hess brought the suit were not identical. Some were men who had been inducted into the armed forces under the Selective Training and Service Act; the majority were not. Hess brought the suit against the corporate employer on his own behalf and on behalf of 178 other employees, nominally including the appellee Whirls. He averred in his petition that the employees were "similarly situated"; but asserted that 104 of them were "actually working" for the defendant company and that 74 of the total number were employees of the defendant company who, at the time of the filing of the suit, were "in the armed forces and services of this Country."

The judgment entered in the Court of Common Pleas of Ohio, affirmed by the Court of Appeals for Hamilton County, Ohio, declared, inter alia, that "the defendant * * * Union treating the employees of the Highland Body Manufacturing Company as new employees of the Trailer Company of America as of January 1, 1944, acted within their lawful rights in determining that the dissolution of the Highland Body Manufacturing Company terminated the employment of the plaintiff and those on whose behalf this action is brought."

■ This declaratory judgment of the state court is not binding upon this court. If recognized here, the judgment of the Ohio courts would nullify the right of the appellee Whirls to his seniority status as an employee of the appellant company as of February 8, 1935. His seniority status as of that date is, as we have shown, guaranteed by the Selective Training and Service Act as long as the Act remains in effect and as long as Whirls remains in the service of the appellant company.

The judgment of the District Court is affirmed.